TOULMIN *VS* AUSTIN.

1. The acknowledgment, (properly certified,) of the execution of a deed, before a *foreign* notary, without registration here, would be sufficient to authorise its reception, in evidence, under the acts of 1803, and 1812.*

2. Parol or extrinsic evidence, is admissible to establish the consideration of a deed, provided it be not incompatible with the consideration *expressed* in the deed itself.

3. A witness, testifying in chief, should furnish *facts*, from which his opinion or belief of a matter is drawn; but this Court will not draw inferences, that this rule has been departed from, where the bill of exceptions does not show a state of things to authorise it.

4. *It seems*, that notice, either actual or constructive, is not necessary to be traced to the purchaser of real estate, at a *Marshal's* or shesiff's sale, in order to protect a stranger, under a *bona fide* out-standing, anterior title, derived from the debtor.

5. Actual notice of a *bona fide* anterior out-standing title, derived from a debtor, is good, if exhibited to a purchaser of real estate, at the time of a sale thereof.

6. Where real estate was sold, as the property of a debtor, by a Marshal, under execution, and, at the time of the sale, a deed, purporting to express valuable consideration and be *bona fide*, was exhibted, executed by the debtor, long anterior to the judgment under which the execution issued, and containing an acknowledgment before, and certificate by a foreign notary, it was held, that the time and manner of the notice to the purchaser, was sufficient to protect the out-standing title.

This action was trespass to try titles, in Mobile Circuit Court; and was prosecuted by John B. Toul-

*Aikin's Digest, p. 88, §1; p. 89, §7,8.

min, against John Austin, for the recovery of a lot of land, in the city of Mobile.

Under the plea of not guilty, a verdict was rendered in favor of the defendant; and the plaintiff, having taken exception to the opinion of the Court, in sundry particulars, removed the cause here, by writ of error.

The plaintiff, to shew his right to recover, offered and read in evidence, the record of a suit, determined between Philip Allen against Thomas C. Butler, junior, in the District Court of the United States, for Alabama; under which, by execution, also produced in evidence, the lot of land in controversy had been sold, and purchased by the plaintiff; and he produced, likewise, the marshal's deed for the same, conveying the title to him, as the purchaser. The plaintiff then gave evidence of the fact, that the said Thomas C. Butler, jr. held the lot of land, by deed from John Forbes & Co., and was in possession some time previous to the judgment being rendered. Further, that Austin, the defendant to this action, was in possession, at the time the action was commenced.

The defendant, in his defence, offered and read to the jury, in evidence, a deed from Thomas C. Butler, junior, to Thomas C. Butler, senior, of the lot of land in question, and which was conveyed to him, as trustee for Jane Ann Butler. This deed was dated on the sixth day of November, one thousand eight hundred and eighteen, and had, attached, a regular certificate of acknowledgment, before a notary public of the city of New York, dated the fifteenth day of February, one thousand eight hundred and nine-

teen; and a memorandum of registration, dated the second day of April, one thousand eight hundred and nineteen.

The defendant also gave in evidence, articles of marriage settlement, entered into between Thomas C. Butler, jr., Jane A. Jones, (afterwards Mrs. Butler,) and William Jones and Seaborn Jones, dated April the twenty-second, one thousand eight hundred and thirteen, and conveying to, and settling upon the said Jane, all and singular, her real and personal estate, to her own separate use: and which also had annexed, a memorandum of registration, dated the third day of May, one thousand eight hundred and thirteen. Defendant proved, also, that Seaborn Jones, one of the trustees in said deed, had died, and that Thomas C. Butler, sr. had been appointed a trustee to said marriage articles, in his stead: that Thomas C. Butler, junior travelled through the State of Georgia, where the marriage settlement was executed, on his way from New York, to the city of Mobile; and carried with him, from New York to Mobile, a large sum of money *believed and understood* to have been part of Mrs. Butler's separate property. That Thomas C. Butler, jr. usually employed the trust funds, in the purchase of stocks, and kept a separate account of the dividends: and that a house-frame had been sent out from New York, as the property of the trustee, and erected on the lot in controversy.

The defendant also furnished evidence, showing, that at the time of the sale of the lot, and the purchase by the plaintiff, the marriage articles were ex-

hibited to all persons present; and notice given, that the lot was claimed for Mrs. Butler.

The plaintiff objected to all these several items of evidence, offered by the defendant; but the objection was overruled by the Court.—No evidence being adduced, of the execution of the deed, from Thomas C. Butler, jr., to Thomas C. Butler, sr., other than that contained in the acknowledgment, as contained in the certificate which accompanied it.

The Court below instructed the jury—

*First*—That the proper inquiry was, not whether Mrs. Butler had a title in the lot of land in dispute, secured in due legal form, but, whether Thomas C. Butler, jr. had, *bona fide*, and for valuable consideration, parted with his estate in it, anterior to the rendition of the judgment, under which the plaintiff sought to deduce title: that if, at that time, or at any time subsequently, Thomas C. Butler jr. had not an estate in the lot, then the plaintiff could not recover.

*Secondly*—That, if the plaintiff was a purchaser, without notice of any pre-existing conveyance by the said Thomas C. Butler, jr., then the title of the plaintiff would be paramount to that of any purchaser, junior, in point of time, to that of the plaintiff: but, that it was not indispensable to the legal operation of a prior deed, that it should be registered; that actual notice was tantamount to registration, and would supply its place; and, that the circumstance of the plaintiff's being a purchaser, at a marshal's sale, under an execution, did not make registration essential—if he had actual notice, that the title had passed from Thomas C. Butler, jr.

*Thirdly*—With regard to the consideration neces-
sary to support the deed, from Thomas C. Butler, jr.
to Thomas C. Butler, sr.—that, if Thomas C. Butler,
sr. was the trustee of the separate estate of Mrs.
Butler, as such, he had, the right to receive the pro-
fits and monies of the trust estate: and that, if the lot
and improvements then in controversy, were paid
for, out of the separate estate of Mrs. Butler, for that
purpose appropriated, by the said Thomas C. Butler,
jr. and which should have passed into the hands of
her said trustee, then there was a sufficient conside-
ration to support the deed.   And, farther—if Tho-
mas C. Butler, jr. was indebted to Thomas C. But-
ler, sr., as trustee of Mrs. Butler's estate, or, had ap-
propriated to his own use, the money or property of
her separate estate—the legal right to which was in
her said trustee—and, because of such indebtedness,
or appropriation, conveyed the lot, with its appurte-
nances, to the said trustee, in satisfaction thereof—
then the consideration, was adequate, in law, to sus-
tain the deed.   And, though Mrs. Butler might be
compelled to resort to equity, to force her trustee to
declare the trusts of the deed, the plaintiff, in the
present controversy, was not, thereby, benefitted.

The plaintiff now assigned as error, the decision
of the Court, as above expressed.   And it was con-.
tended—

*First*—That the admission of the deed was error,
because it could only be admissible, in testimony,
under one, of two statutes of this State, passed in
one thousand eight hundred and three, and one thou-
sand eight hundred and twelve:* and, it was said,

*Aikin's Digest, page 88, §1; page 89, §7.—REPORTER.

that neither of these statutes, contemplated certifi-
cates by foreign officers, but confined such certificates
to certain known officers of this State.

And, it was further insisted, that the correctness
of this position was shewn by the second section of
the act of one thousand eight hundred and thirteen,[*]
which prescribes the manner in which conveyances,
made out of the State, should be admitted to record:
this last, providing that such might be admitted to
*record*, not in *evidence*, there being a wide distinction.
That the genuineness of certificates taken out of the
State, could not be tested.

*Secondly*—That the only evidence admitted, of the
property being purchased out of Mrs. Butler's sepa-
rate estate, was the mere belief of a witness: and it
was said that the mere belief of one, might be ho-
nest, yet not legal evidence, because the *source* of
such belief might be false.

*Thirdly*—That the deed, from Butler jr. to But-
ler, sr., was void.—4 Kent's Com. 305.

1. It contained no declaration of the trusts. 2. It
did not follow the marriage articles. 3. By them,
Butler. jr. had a life estate in the property, of which
he could not divest himself, as against his creditors.
4. By investing his wife with the absolute estate in
fee, he defeated his creditors of his life-interest.—
And so, for these reasons, the Court erred, in ruling,
that the appropriation was valid and effectual.

*Fourthly*—That the mere exhibition of the claim,
on the day of the sale, would not be sufficient no-
tice.—2 Bin. 40. That such a rule would cause a
sudden sale, to the sacrifice of the property ; because

[*]Aikin's Digest, page 89, §8.—REPORTER.

no one, at the moment of such exhibition, could in-
vestigate the claim, or the deed, on which it was
founded, and test its validity—the consequence of
which would be, that prudent persons would refuse
to purchase, and the property be sacrificed. That
notice, as alluded to in one statute, should be some-
thing more than mere floating rumor or assertion, of
claim.—1 Rand. 241 ; 2 Nott & M'Cord, 105.

But, it was said, for the defendant, that the only
inquiry was, whether the plaintiff was a purchaser
without notice; and it was contended that the notice
was good—a certified copy of the deed being read
at the time of the sale; and that was notice enough
to put a buyer upon the inquiry. That the entire
proof was before the jury, and if they found, that
Toulmin had notice, from all the circumstances, of a
pre-existing deed, it was sufficient. That, as to the
belief of the *witness*, who testified in reference to the
purchase of the property in contest, out of Mrs. But-
ler's separate estate, this Court could not enquire
farther than the bill of exceptions; and it could not
be inferred, therefrom, that the Court below admit-
ted the mere *belief*, or hearsay of the witness, to go
to the jury, as evidence. That the validity of the
deed, if tested by the insolvency of Butler jr. was
apparent, because he had as good right to prefer
Butler, sr., as any other creditor. And, that the
plaintiff should have recovered on the strength of
his own title.

Argued by *Goldthwaite*, for the plaintiff in error.
*Elliott*, contra.

THORNTON, J.—This cause, which was tres-
pass to try titles, comes up, on a bill of exceptions,
taken during the trial, by the plaintiff in error, who
was also the plaintiff below : and the error assign-
ed is, in the admission of certain *testimony*, set forth
in the bill of exceptions—and in the instructions gi-
ven to the jury, thereon.

By the bill of exceptions, it appears that the
plaintiff claimed title as a purchaser at the sale of
the marshal of the Southern District of Alabama,
by virtue of an execution to him directed, in favor
of one Philip Allen, as the estate of one Thomas C.
Butler, jr., who was in possession of the lot in ques-
tion, (having previously obtained a deed from John
Forbes & Co.,) at the date of the said judgment.

It also appears, from the bill of exceptions, that
the defendant, Austin, was in possession of the pre-
mises, at the time of the commencement of this ac-
tion, by the plaintiff. It does not appear, however,
that Butler, the defendant in the execution, was in
possession, at the time of the marshal's sale; or that
the defendant in this action, was put into the posses-
sion, by the said Butler. For aught that appears,
the defendant may be a tenant, under Thomas C.
Butler, sr., whose title to the property he sets up,
against the present plaintiff.

If the fact had been apparent, that the defendant
in this action came into the possession of the premi-
ses, after the sale and purchase by the plaintiff, in
virtue of any contract with the debtor, Butler—as
he, Butler, could not, himself, if the action had been
brought against him, resist, in any manner, the reco-

5 s. & p.          53

very of the plaintiff, so could not the present defendant, claiming under him. For which principles, see 3d Caine's Reports, 188, and *Jackson* vs *Harder*.[a]

*4 Johns. R. 211.*

But, as this relation of parties does not appear, from the record, to exist, the principles alluded to, do not apply, and the defendant may take shelter under any out-standing title, which he can shew to subsist, better than that of the plaintiff.

Having determined, then, that it was competent to the defendant, to set up an out-standing title, in opposition to the plaintiff's recovery, let us proceed, according to the order suggested by the bill of exceptions, to consider—First, the sufficiency of the evidence introduced, to maintain this alleged paramount title; and, secondly, the legality of the instructions, given upon that evidence.

The paramount title, interposed by the defendant, was a deed of conveyance, bearing date the sixth of November, one thousand eight hundred and eighteen, purporting to have been executed by the debtor in the original judgment, Thomas C. Butler, jr., long anterior to the judgment, to satisfy which the premises were sold. This deed was executed in the city of New York, where the bargainor lived. It was attested by two witnesses, and purports to be certified under the hand and notarial seal of Dan'l Keese, notary public of the city of New York. There is endorsed on the said deed, in addition to the said notarial authentication, the following words and figures : "Rec'd in office, the 2d April, 1819—recorded in book B, page 261. D. Duval, Dep. Reg."

The propriety of admitting this deed, thus certified by the notary public of New York, to be read as

evidence, on the trial, depends upon the construction of two acts *in pari materia*—one of one thousand eight hundred and three, entitled " an act respecting conveyances," and the other of one thousand eight hundred and twelve, entitled " an act to amend an act, respecting conveyances."

Notwithstanding the ingenious argument of the plaintiff's counsel, to distinguish between a certificate of acknowledgment, made by an officer of the State, as authorised by the first section of the first act, and that made by a foreign notary, in the case provided for by the second section of the last mentioned act—I feel constrained, so to construe those acts, as to give equal force and validity to either mode of proof.

The first act declares, in its first section, after specifying before whom the proof or acknowledgment shall be made : that if a certificate of such acknowledgement or proof, shall be written upon or under the said deed, and be signed, &c., then every such deed or conveyance, so acknowledged or proved and certified, shall be received in evidence, in any Court of this territory, as if the same were then and there produced and proved.   This section relates to conveyances, to and from citizens of the then territory.

In section four, of the same act, reference is had to the convenience of the citizen, by providing a different mode of proof, in case of absent conveyors; and after designating several functionaries, residing in other States, before whom proof may be made, declares that such proof or acknowledgment, so certi· fied, shall be as *good* and *effectual* as if made before, and certified by one of the judges of the Supreme

Court of the territory. That is, such deed may be admitted to record in the proper office, and, whenever needed, may be read as evidence, in any Court in the territory.

The second section of the amendatory act, I consider as only consulting the convenience of the citizen still farther, by adding the notary public to the list of those functionaries, who were, by previous provisions of law, authorised to take and certify the proof of conveyances, leaving the effect the same as before.

That the deed might have been properly admitted to record, upon this notarial certificate, is not denied, and it would seem strange indeed, that, through the mere medium of registration, a party could make that testimony, which, otherwise, could not be heard.

The next and only remaining portion of the testimony, admitted and objected to, which, according to my view of the case, it is necessary to advert to, is that part which regards the *consideration* of the deed, the admission of which has just been considered. The deed purports, upon its face, to be in consideration of the sum of twelve hundred dollars, paid by the grantee, as trustee of Jane Ann Butler, to the grantor.

It was urged in argument, by the counsel of the plaintiff, that the evidence adduced and admitted, touching the consideration of the deed, was illegal; because it varied from the consideration on which the deed purports, on its face, to have been executed. Now, from my view of the testimoy, the parol proof, concerning the consideration, was not contradictory

of the consideration expressed in the deed : and it is laid down, as a settled rule, that parol or extrinsic evidence, is competent to prove a consideration, provided it be not incompatible with the consideration expressed in the instrument.[a]

It is also urged, that it is apparent, from the bill of exceptions, that incompetent testimony was admitted by the Court. The portion of the bill of exceptions relied upon, to maintain this allegation, is in the following words : "The defendant also proved, that Thomas C. Butler, jr. once came through the State of Georgia, the State where the marriage settlement was made, on his way from New York, to the city of Mobile, and brought with him from that State, to Mobile, a large sum of money, which the witness *understood* and *believed*, was a part of Mrs. Butler's separate estate."

Now, it is readily admitted, that a witness, when testifying in chief, should always furnish the *facts*, on which his *opinion* or *belief* is founded; and that, if objected to, his *opinions*, *abstracted* from the *facts* on which they are founded, will not be admitted in evidence—for his deductions may not be warranted; and the jury might deduce very different conclusions, upon the same principles. The bill of exceptions, however, does not, to my mind, warrant the inference, that, either through inadvertance or otherwise, in this case, the naked understanding and belief of the witness, was obtruded upon the jury.

If the witness had understood the fact, from a source which made it testimony, and had disclosed that source at the time, the draftsman of the bill of exceptions, in summing up the facts, might have

[a]2Mars.300
1ib. 582.

stated them there, and yet not have negatived that state of the case.

It would be a departure from the uniform tenure of decisions in this Court, to indulge in inferences, favorable to the reversal of judgments, much more, in a case like this, where the inference we are called upon to draw, stands opposed by a host of contrary probabilities.

Then, with regard to the instructions or charge of the Court, to the jury, in this case, it seems to me, that the only error, if, indeed, there be any, is one of which the plaintiff can not be heard to complain— because it was in his favor rather than against him. I allude to the charge, which was, in substance, that if the plaintiff purchased at the marshal's sale, without notice of the prior conveyance from Thomas C. Butler, jr., to Thomas C. Butler, sr., then his title was paramount, &c. I feel strongly inclined to the opinion, that no notice, either actual or constructive, was necessary to be brought home to the plaintiff, in this case, in order to the protection of the defendant, under the title of Thomas C. Butler, sr., provided the said title or conveyance were not infected with *fraud*, the existence of which, or not, I think, was properly submitted to the determination of the jury, under all the circumstances of the case.

The deed of conveyance, from the younger Butler to the elder, on which the defendant relies, was executed in November, one thousand eight hundred and eighteen. By our laws, regulating the transfer of real property, all the right of the bargainor in the premises, was communicated to the bargainee. The transference was complete.

Without any statute like that of registration, I would humbly inquire, whether a subsequent conveyance, by the said Butler, to any other person, could, by any possibility, affect the vested right of the elder Butler, to the premises? I apprehend not. Would not the case be the same, if any creditor of the said Butler, jr., after his divestiture of all his interest, by a *bona fide* conveyance, were to levy, and sell the land, as the property of his debtor? In either case, nothing would be sold, and nothing bought.

The common law rule is, "*Nemo plus juris in alium transferre potest, quam ipse habet.*" This doctrine has, however, been invaded, to a certain extent, by the statutory enactments, which sound policy seemed to require, for the protection of innocent purchasers, from fraudulent vendors. To effect this purpose, alone, the act of one thousand eight hundred and eleven,[a] was enacted. It provides that all deeds, which shall be made after its passage, no matter on how good or valuable consideration they may be founded, shall be void and of no effect, against a subsequent *bona fide* purchaser, or mortgagee, for a valuable consideration, not having notice thereof, unless recorded, &c.

*Ala. Dig. p.245.

It has been decided by this Court, in the case cited at bar, *Read* and *Avant*, that, without registration, all deeds, subject to the operation of this act, were valid, (nothing else preventing,) against the creditors of the grantor; and I entertain the opinion, that they are valid, in the same way against a purchaser, at a marshal's or sheriff's sale—such a purchaser not being within the mischief intended to be remedied by the act.

In corroboration of this conclusion, limiting the meaning of the word purchaser, as used in this act, to such as purchase of the *fraudulent vendor*, I refer to the case of *Helm* vs *Lyon's heirs*,[a] where, under a statute, having the same object with ours, but more extensive in its operation, making the deed void, for want of registration, against creditors, as well as subsequent purchasers, without notice, it was held, that a purchaser, under execution is not affected, by notice of a mortgage, which was not recorded, and was, therefore, void, as to creditors. It is not necessary, however, to decide this point, for, in the case in hand, we consider, that *actual notice* was given to the plaintiff. Nor do we think it the less sufficient, because of its being given upon the eve of the sale. It was yet in time to affect its only legitimate object. The warning was in time to have escaped the blow.

It has long been a settled rule in Chancery, touching notice of prior *equitable rights*, that notice, either before the obtaining the title, or before payment of the consideration, is sufficient for the purpose of overreaching the legal title in the hands of a purchaser, in favor of the prior equity.[b]

By analogy, this notice may surely be considered as timely. Nor do we consider the *manner* adopted in this instance, to give notice, as subject to objection. It was given, according to the bill of exceptions, to all persons present, by an exhibition of the deed, with the certificate of acknowledgment upon it. By virtue of that certificate, the grantee could claim its admission into the records of the country; and if it had been put there, though entombed in the musty folio

of the clerk, and never seen or heard of, it would have been, by construction of law, an effectual notice to all the world.

Its actual presentation is, at least, a better notice than that which would, confessedly, have squared with the requisitions of the law. It was both notice and knowledge, of the prior sale.

From this consideration of the cause, as presented by the bill of exceptions, we are of opinion that the judgment be affirmed.