**BURT v. MOSES et al. (3 Div. 628.)**

(Supreme Court of Alabama. Jan. 24, 1924. Rehearing Denied Feb. 14, 1924.)

**1. Frauds, statute of ☞129(8)—Verbal land contract taken out of statute by possession and payment of part of price.**

A verbal contract for the sale of land, void under Code 1907, § 4289, subd. 5, was taken out of the statute by purchaser's possession of land and payment of a part of the purchase price.

**2. Witnesses ☞149(1)—Complainant seeking specific performance of decedent's contract held incompetent to testify as to statements by decedent.**

In suit for specific performance of a decedent's oral contract to convey land, complainant's testimony as to statements made by the decedent held incompetent, under Code 1907, § 4007, making testimony by a person having a pecuniary interest in the result of a suit as to a transaction with or a statement by a decedent whose estate is interested in the result of the suit, incompetent.

**3. Specific performance ☞121(1) — Verbal agreement to convey land must be established by clear and satisfactory proof.**

In a suit for specific performance of a verbal contract for the sale of land, the complainant must establish the terms, conditions, and consideration pleaded in the bill by clear and satisfactory proof.

**4. Specific performance ☞121(3)—Evidence as to verbal agreement to convey land held not sufficient to warrant decree.**

In purchaser's suit for specific performance of verbal agreement to convey land, evidence held not to sustain the averments of the bill as to the terms, the consideration, the conditions, and the property sold, by the clear and satisfactory proof required in such cases.

Appeal from Circuit Court, Autauga County; B. K. McMorris, Judge.

Bill in equity by Isaac Burt against J. T. Moses, for whom E. J. Meyer, as administrator of the estate of J. T. Moses, deceased, and others, were substituted for specific performance of an oral contract for the sale of lands. From a decree denying relief, complainant appeals. Affirmed.

Gipson & Booth, of Prattville, for appellant.

It is shown that appellant purchased the land from appellee, went into possession, and made payments thereon, which were accepted by appellee as payments on the purchase price as agreed. The transaction is thus taken without the statute of frauds. Hodges v. Verner, 100 Ala. 612, 13 South. 679; Carlson v. Erickson, 164 Ala. 380, 51 South. 175. If payments were not made as originally agreed, acceptance of payments as made was a waiver of forfeiture on that account. Fulenwider v. Rowan, 136 Ala. 287, 34 South. 975; Alcazar Am. Co. v. Mudd & Colley Am. Co., 204 Ala. 509, 86 South. 209.

Eugene Ballard, of Montgomery, for appellees.

Where the testimony in reference to the contract is so conflicting that it cannot be said to be clearly proved, a court of equity will not enforce specific performance. Pike v. Pettus, 71 Ala. 98; Brown v. Weaver, 113 Ala. 228, 20 South. 964; Pepper v. Horn, 197 Ala. 395, 73 South. 46; 5 Pomeroy's Eq. Jur. (Last Ed.) 5032.

MILLER, J. This is a bill in equity filed by Isaac Burt on June 9, 1918, against J. T. Moses, for specific performance of an oral contract of sale of 80 acres of land, entered into by them in May, 1912. The defendant Moses died, and the cause was revived in the name of E. J. Meyer, as administrator of the estate of the decedent, and the widow and heirs of J. T. Moses were by amendment, made parties to the cause.

The bill alleges the decedent, Moses, in May, 1912, sold to complainant 80 acres of land, describing it, for the sum of $1,500 payable $300 a year for 5 years without interest, beginning October 1, 1912, and that he paid Moses the sum of $25 cash on the purchase price; that he was placed in possession of the land by Moses, and afterwards made the following payments on the purchase price to Moses: $225 on October 15, 1912, $250 on October 1, 1913, $125 on October 1, 1914, $125 on December 1, 1915. The defendant Moses agreed, when complainant paid the $1,500 to

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

him that he would execute and deliver to the complainant a warranty deed conveying to him in fee simple, free from incumbrance, this land. J. T. Moses in 1915 sold the timber on this land to Jim Miller for the sum of, to wit, $1,000, which was paid to Moses by Miller, and which he refuses to credit complainant with on the purchase price of the land. The bill also alleges the price received for the timber and the payments made on the land exceed the purchase price of the land, and, if in this complainant is mistaken, then he offers to pay such balance as may be found due, and that J. T. Moses failed and refused to execute and deliver to complainant a deed to the land in accordance with the contract.

The prayer of the bill seeks an accounting by reference, and, if anything is found due on the purchase price, that complainant be allowed to pay it upon the execution and delivery to him of a deed to the land according to the terms of the contract.

The defendant answered by denying all of the foregoing allegations contained in the bill of complaint.

The trial court, by decree on pleading and proof, denied complainant relief, dismissed his bill, and taxed him with the cost. This decree is the error assigned.

[1] An entirely verbal contract for the sale of land is void, unless the purchase money, or a portion thereof, be paid, and the purchaser put in possession of the land by the seller. Subdivision 5, § 4289, Code 1907. However, a verbal contract for the sale of land is not void when a part of the purchase money is paid by the vendee to the vendor, and the vendee is put in possession of the land by the vendor. This would render the statute of frauds (section 4289, Code 1907) inoperative on the verbal contract. L. & N. R. R. Co. v. Philyaw, 94 Ala. 463, 10 South. 83.

The evidence shows without conflict a verbal sale of this land to complainant by J. T. Moses in 1912. Complainant was placed in possession of the land by Moses, the vendor, and $25 of the purchase price was paid by the vendee to the vendor. This renders the verbal contract valid, and takes it from under the operation of the statute of frauds. Section 4289, Code 1907.

Justice Stone in Daniel v. Collins, 57 Ala. 627, in writing on the subject of specific performance of an agreement to sell lands, said for the court:

"In such suits, great accuracy of averment, and strict, corresponding proof are required. Loose and inaccurate pleading, or variant or merely persuasive testimony, is alike fatal to the relief prayed. The complainant's case must be clearly made out in harmonious pleading and proof, to entitle him to a decree. * * * Perhaps a better definition of the rule is that the court will never grant this relief, * * * where the proof of right is not clear. Courts, in such cases, will not grope their way on inconclusive probabilities."

Again, this court, in Allen v. Young, 88 Ala. 340, 6 South. 747, wrote on this subject:

"In suits for the specific performance of parol contracts respecting the sale of lands, the rules of equity pleading require that the contract shall be distinctly, definitely, and precisely averred, so that the court may not be left to inference, or in uncertainty, as to its terms, or as to the rights of the parties. In no other class of cases is correspondence between the allegations of the bill and the proof produced to establish them more rigidly exacted. It is not sufficient that some agreement be proved. If the evidence fails to satisfactorily establish the particular agreement alleged in the bill, or leaves any of its material terms in doubt or uncertainty, equity will not lend its aid to enforce its specific performance."

In Pepper v. Horn, 197 Ala. 399, 73 South. 46, this court quoted with approval a part of the foregoing and cited both of the cases. See, also, Pike v. Pettus, 71 Ala. 98; Brown v. Weaver, 113 Ala. 228, 20 South. 964. In Harrison v. Harrison, 198 Ala. 160, 73 South. 455, this court wrote:

"The evidence must be such as to produce a clear conviction of the existence and terms of the contract as alleged."

The verbal contract of sale between the parties, as it appears in the bill of complaint, as hereinbefore stated, is clearly, distinctly, and definitely averred.

[2] Does the evidence satisfactorily establish the particular agreement and the terms of the contract as alleged in the bill? Are any of its material terms in doubt or uncertainty from the evidence? These are questions to be answered from the proof. The complainant, Isaac Burt, testified in his own behalf in this cause, in regard to this verbal contract with deceased, J. T. Moses, and statements made by the deceased to him. His testimony was taken after the death of J. T. Moses, and such testimony was clearly incompetent as to any transaction with or statement by the deceased, whose estate is interested in the result of the suit under section 4007 of the Code of 1907; but a part of it went in without objection, and a part was objected to, but no ruling was made thereon by the court. The following part of his testimony, in substance, was not objected to by the defendants: "I bought the land, 80 acres; the price to be paid for the land was $1,500. The timber on it was not sold when I bought it, and no timber was reserved when I bought it." He (complainant) made entries in his book, which he stated were the amounts paid on the land, as follows: "1912 —$225, paid to Judah Moses; 1913—$225, paid to J. T. Moses; 1914—$125, paid to J. T. Moses; 1915—$125, paid to J. T. Moses;" and he testified, "I had the tenants to turn him over five bales of cotton in 1916." These

were all the payments made on the land, as shown by complainant's evidence. His witnesses testified this cotton was worth 7 cents per pound. The following question to Isaac Burt, the complainant, and his answer thereto, were objected to by defendants, but the trial court did not rule thereon: "How long did you have to pay for it [the land]? He [meaning Moses, the vendor] did not limit it."

We make these quotations from the testimony of the complainant, while it is incompetent, to show the uncertainty as to the terms of the contract as he states them.

The complainant and Ben Wilson testify they were present in Montgomery with J. T. Moses when the contract of sale of the land was made. Ben Wilson testified, in substance, that he was in Montgomery in 1912, went with the complainant to the office of J. T. Moses; and also testified as follows:

"Was there any transaction that you heard between Burt and J. T. Moses, the defendant in this suit? Isaac Burt paid him $25.

"Do you know what the $25 was for? For land he said.

"Did he say anything at all about there was any more money to be paid? No, sir.

"Did Mr. Moses say anything about what the land would be sold for? $1,500.

"About how long ago was that, Ben? In 1912.

"What was your business in Montgomery at that time? I was there to have a spring fixed in my watch.

"You have never seen Mr. Moses since that time? No, sir.

"Are you any relation to Isaac Burt? No, sir.

"Are you interested in this suit? No, sir.

"Was the payment of the $25 and the statement about $1,500 being the price all you know about it? Yes, sir.

"Did J. T. Moses at that time give Isaac Burt a receipt for the money at that time? Yes, sir.

"Did he say where this land was? No, sir; he did not say where.

"You did not know where the land was? No, sir."

Claude W. Smith, witness for complainant, testified that J. T. Moses told him the timber on this land had been sold before the contract of sale of the land was made to Isaac Burt; that he had negotiated the sale of the timber to Jim Miller. S. C. Dawsey, witness for defendant, testified the timber on the land had been sold before the sale of the land to complainant, and that he was acquainted with the land trade, transaction, between Isaac Burt and J. T. Moses. His testimony on this subject is as follows:

"Do you know the trade that was finally made between Moses and Burt? I do.

"What was it? He was to pay $300 a year; if he failed to make the payment then the payment of $150 was to go as rents on the 80, and another piece of land that adjoined it or near it.

"He was to pay $300 a year for how many years? If he paid $300 cash it would be 5 for the balance, that is $1,800, if it was sold on credit or $1,500 cash.

"Was the transaction $1,800 on credit or $1,500 cash?

"Do you know how much he paid on the place? I do not know.

"How long did you remain with Mr. Moses? Till he died.

"Did he not discuss with you as to whether or not the payments were kept up? He never made the first payment—he goes along and pays less than the rent."

P. N. Gates, witness for defendant, stated he looked after the business of J. T. Moses from about 1900 to 1917; that he knew of this land trade between Moses and Isaac Burt—the price to be paid was $1,500. On this subject he was questioned, and testified, as follows:

"Did you not hear him agree to sell Burt 80 acres of this land? Yes, sir; I heard an agreement that they talked over about 80 acres of land, and finally engaged a surveyor and surveyed a tract of land. I was on the trade for Mr. Claude Smith for some of the land adjoining him, and in case the negro closed the deal it would throw him further back west.

"Was anything said by Moses to Burt at the time of the trade about the timber on this 80? Yes, sir; the timber was sold before this to Gilder Lumber Company. Then at the time it was run out, we were surveying that land. The timber was reserved. I went down with Jim Miller on several trips, and sold the timber to Jim Miller.

"Did Moses, or not, at the time of the trade reserve the timber? Yes, sir; the timber was reserved. I told Mr. Claude Smith the timber was reserved.

"Do you know how much he was to pay a year on this land? I think in the conversation the first payment was about $250.

"Did he keep up the payments that he agreed to make when he agreed to purchase the land? No, sir; he did not.

"Did you look after the collections of those payments? Yes, sir; on several occasions I tried to get him down there over Mr. Northington's phone and tried to get him to meet me down there, as he was behind, but could not. In 1916 he didn't pay anything, because nobody made anything. I advised him to do away with the negro and not rent to him any more, but he failed to comply.

"Did he have more of Moses' land than 80 acres? Yes, sir."

There is an instrument in evidence showing that J. T. Moses conveyed all timber suitable for logs or lumber on this 80 acres and other lands to Gilder Lumber Company on August 10, 1907, and gave them 5 years from that time to cut and remove it; all timber remaining on the land at the end of the time limit of 5 years was to revert to the grantor. The grantee had 5 years after August 10, 1907, to cut and remove the timber. This bill alleges, and the proof indicates, this sale of the 80 acres of land was made to Burt by Moses in May, 1912, during those 5 years, and that, after the expiration of the 5 years the timber left on the land was sold to Jim Miller or Miller & Co. by J. T. Moses.

211 Ala.—4

The complainant, an incompetent witness to this transaction with decedent, avers in the bill and testifies without objection that the timber on the land was not reserved by Moses, the vendor, in the verbal contract of sale. A witness for complainant and a witness for the defendant testified the timber on the land was not sold to the complainant with the land. They are corroborated in this by the written deed, which was on record, showing at the time of the sale the timber belonged to Gilder Lumber Company, and that their 5-year limit was not out at that time. Many witnesses testify the timber was afterwards sold by Moses to Jim Miller or Miller & Co.

This timber on the land was a material part of it. The bill alleges it was sold to the complainant with the land. The proof does not sustain the averment. Whether the verbal contract of sale of the land included the timber is in doubt, uncertain, and indefinite from the testimony. The great weight of the legal evidence on this subject is against this averment in the bill. The bill alleges the consideration for the land, with the timber on it, was $1,500, payable $300 annually for 5 years, without interest, beginning October 1, 1912.

One witness for complainant testified the consideration was $1,500 for the land and the timber. Witnesses for the defendants testified the consideration for the land without the timber was to be $1,500 cash, or $1,800 on credit, payable $300 annually for 6 years, and, if the complainant failed to pay the annual installment, then he was to pay $150 rent annually, that he failed to pay the first and all the purchase installments, and his payments did not exceed the rent agreed to be paid under the contract.

The proof of the consideration does not support and sustain the averments of the bill. The amount of the consideration for the land, and the terms and conditions of the agreement—if the purchase price was not paid, then the rent contract in lieu thereof became operative—are material and vital parts of the contract of sale. The amount of the consideration, the terms and conditions of the contract of sale as shown by the evidence do not harmonize with the averments of the bill as to the contract. The real amount of the consideration, the real terms and conditions of the contract, are left in grave doubt and uncertainty by the evidence. The evidence does not support and sustain the averments of the bill in many material parts of the contract as alleged therein.

[3] This is a bill for specific performance of a verbal contract of sale of land. To secure such relief the correspondence of the proof with the allegations of the bill must be clear and satisfactory. The court must not be left by the proof in doubt, uncertainty,

and to inferences as to the contract or as to the terms, conditions, and amount of consideration of the contract. Allen v. Young, 88 Ala. 340, 6 South. 747, and authorities supra.

[4] The proof does not measure up to this standard. The complainant did not by "clear and satisfactory proof" sustain the averments of the bill as to the consideration, the terms, the conditions, and the property, land and timber sold by the verbal contract, and the trial court did not err in denying him relief, dismissing his bill, and taxing him with the costs of the court.

The decree is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.