63 So.2d 695

**THOMPSON v. WILSON et al.**

4 Div. 682.

Supreme Court of Alabama.

Jan. 22, 1953.

Rehearing Denied March 19, 1953.

Lewis & Lewis, C. R. Lewis and P. S. Lewis, all of Dothan, for appellant.

L. A. Farmer, Dothan, for appellees.

BROWN, Justice.

This appeal is by the defendant, or as designated in the pleading, "the respondent," from the final decree of the Circuit Court of Houston County, sitting in Equity, granting to the complainants specific performance of the verbal agreement made and entered into by and between the parties on June 2, 1949, as alleged in the original bill.

That a contract was made and entered into by and between the appellant and Mrs. Thompson on the above mentioned date, that the appellant Mrs. Thompson agreed to sell and convey certain property to Mrs. Wilson located in the City of Dothan, Houston County, Alabama, is confirmed in the pleading. The property is described in the bill of complaint as follows:

"Beginning at inner edge of sidewalk at northwest intersection of Foster and Newton Streets; thence north along Foster Street 98 feet to Southeast corner of A. L. Faulk lot; thence West parallel with Newton Street 180 feet to fence; thence north parallel with Foster Street 96 Feet; thence East 180 Feet to Foster Street; thence South along street to Southeast Corner of

A. L. Faulk lot; said lot being a part of the SE¼ of SW¼, Section 13, Township 3, Range 26, together with all improvements thereon", which is in the exact language used in paragraph B of the defendant's answer and cross bill, alleging the date of the contract to be "June 2nd, 1949."

The original bill alleges that the contract was made by and with both complainants and the respondent and that the purchase price was "at and for the sum of $12,000, $250 of which purchase price was paid in cash on said June 2, 1949, and complainants agreed to pay to respondent the balance of said purchase price in monthly installments of at least $150 per month for the first year after said contract was entered into and $125 per month thereafter until the balance of said purchase price, with interest at the rate of 6% per annum, had been paid in full and upon the payment of the entire purchase price, respondent would convey said property to complainants by warranty deed; and that complainants were placed in possession of said real estate by respondent; went into the possession of same, have been in possession ever since and are now in possession.

"(3) That as a part of said contract of sale, it was agreed by and between the complainants and respondent that after complainants had paid $500 of the purchase price of said real estate, respondent would execute to complainants a bond for title expressing the terms of agreement between them; that after $500 had been paid on the purchase price of said property, complainants called on respondent to execute said bond for title but respondent refused to do so and promised complainants that after $1,000 had been paid on the purchase price of said property, she would execute a warranty deed and thereby convey said property to complainants and take a mortgage back for the balance of said purchase price; that after $1,000 had been paid on the purchase price of said property, complainants called on respondent to execute said deed to them and offered to execute a mortgage to respondent for the balance of said purchase price but respondent refused to execute said deed and refused to permit complainants to make said mortgage; that since said oral agreement was entered into by complainants and respondent on said 2nd day of June, 1949, respondent has without the consent of complainants advanced the purchase price of said property, first to $15,000 and then to $20,000 and now claims that the original purchase price agreed upon between complainants and respondent was $20,000 which is untrue; and that respondent did on the 17th day of March, 1950, serve notice on complainants Mrs. W. J. Wilson that her possessory interest in said real estate was terminated and said complainant was notified to quit and surrender possession of said real estate to respondent within ten days from the service of said notice and also notified that if she did not do so, suit for possession of said real estate would be filed against her."

The answer and cross-bill first filed alleges, "That on or about June 2, 1949, respondent entered into an oral agreement with Mrs. W. J. Wilson, the terms of which agreement were substantially as follows: That respondent agreed to sell to said Mrs. W. J. Wilson and said Mrs. W. J. Wilson agreed to buy from respondent the property described in Paragraph (2) of said complaint at and for the sum of $20,000, $400 of the purchase price to be paid respondent by said Mrs. W. J. Wilson on June 2, 1949, and $200 per month thereafter until said purchase price was paid in full, together with interest thereon each year at 6% per annum, said Mrs. W. J. Wilson to pay all taxes, insurance and cost of upkeep and maintaining said property; that upon the compliance by said Mrs. W. J. Wilson with the terms of said agreement and upon the payment by her of the sum of $1,000 on the purchase price to respondent, that respondent would execute a written bond for title agreeing to convey said property to said Mrs. W. J. Wilson upon said verbal terms and conditions so agreed upon; that upon the compliance by said Mrs. W. J. Wilson with all of said terms and conditions and the payment by her to respondent of said $20,000 in said installments as agreed upon, that respondent would execute to said Mrs. W. J. Wilson a warranty deed conveying said property to her; that on or about the 2nd day of June, 1949, said Mrs. W. J. Wil-

son moved into the house on said property and has been in possession thereof ever since; that on, towit: June 2, 1949, after having gone into possession of said property, said Mrs. W. J. Wilson paid respondent only $250 down, rather than the $400 agreed upon, and promised to pay the remaining $150 down within thirty days; that said Mrs. W. J. Wilson failed to pay the taxes on said property and failed to pay the cost of upkeep and maintenance of said property; that she failed to make the payments monthly agreed to be made by her as alleged in Paragraph (2) hereof; that she paid respondent only $105 in February, 1950, and paid respondent only $95 in March, 1950, that she has paid nothing in April, 1950, and has been, and at the time of the filing of this suit was and she still is in default as to aforesaid monthly installments due respondent by said Mrs. W. J. Wilson under the terms of aforesaid agreement set out in Paragraph (2); that complainant W. J. Wilson was not a party to any of aforesaid agreement."

The cross bill sought to declare the contract void and to establish a landlord's lien for rent on the property of complainants, enjoying the protection of the buildings on the premises. The circuit court overruled the cross-respondent's demurrer to the cross bill and cross-respondent appealed. This court reversed. Wilson v. Thompson, 255 Ala. 165, 51 So.2d 20.

The substance of the holding on that appeal is expressed in headnote 2: "Execution by vendor of an executory contract to sell lands without provision therein excluding purchaser's right to possession or rents and profits, operates to divest vendor of any right to rents and profits pending the executory contract to convey."

On remandment the cross-complainant amended the cross bill alleging: "(f) That since March 17, 1950, the date on which aforesaid verbal agreement between cross-complainant and cross-respondent was terminated in writing, as aforesaid, cross-complainant has been entitled to possession of said real estate *but cross-respondent has been in the lawful possession of said real estate* and has refused to surrender possession of said real estate and has refused to surrender possession thereof to cross-complainant and has paid nothing to cross-complainant; * * *."   [Italics supplied.]

Taking the averments most strongly against the pleader, as the rule on demurrer requires, they show that the complainants—cross-respondents—are in the *lawful* possession of the property under the contract as purchasers and on principles stated in the opinion in Wilson v. Thompson, supra, the demurrer to the amended cross-bill was sustained without error.

Aside from the question of the competency and relevancy of some of the testimony offered by the appellant to prove the value of the property in controversy, the questions presented are purely questions of fact, to be determined from the competent, legal and relevant testimony and documentary evidence. Code of 1940, Tit. 7, § 372(1); Acts of 1943, p. 105, approved June 8, 1943; Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115.

Testimony given by Mrs. Thompson and some of the witnesses examined in her behalf relating to the transaction between them and statements or declarations by them with third parties, offered to show the value of the property, the subject-matter of the contract of sale, and the parol testimony as to the fixation of values of the property by some revenue agent, was irrelevant, incompetent and immaterial to show value and falls under the rule of exclusion,—*res inter alias acta.* Chamberlain, Mod.Ev. Vol. 4, § 320; Martin v. Jesse French Piano & Organ Co., 151 Ala. 289, 44 So. 112; Hall v. Cardwell, 5 Ala.App. 481, 59 So. 514; Humes v. O'Bryan & Washington, 74 Ala. 64; Mobile & Montgomery Railroad Co. v. Ashcraft, 48 Ala. 15; Smith v. Flagg, 46 Ala. 624; Lavender v. Hall, 60 Ala. 214; Andrews v. Tucker, 127 Ala. 602, 29 So. 34.

The well settled rule is that in suits for specific performance "great accuracy of averment, and strict, corresponding proof are required. Loose and inaccurate pleading, or variant or merely persuasive testimony is alike fatal to the relief prayed." Daniel v. Collins & Co., 57 Ala. 625, 627. This utterance was seemingly provoked in

the case cited and relief denied because the property as to which specific performance was prayed was not definitely described or identified, either by the pleadings or by the proof. In disposing of the case the learned Justice observed, "And so it is said, *with some inaccuracy of expression,* that it is discretionary with the court whether it will, in any case, enforce specific performance. Perhaps a better definition of the rule is, that the court will never grant this relief, in enforcement of an unconscionable bargain, or where the decree will work undue oppression to the defendant, or where the proof of right is not clear. * * *." Daniel v. Collins & Co., 57 Ala. 625, 627–628. [Italics supplied.]

The rule was restated and followed in Allen v. Young, 88 Ala. 338, 6 So. 747, 748, wherein the bill was filed by Young seeking specific performance of a contract between the parties for the purchase of a house and lot in Birmingham by Young from Allen, the house to be built subsequent to the date of the contract. Relief was granted and on appeal the decree was reversed, the court observing: " * * * Though there is nothing in the bill from which the time of payment, and the character of the dwelling, can be ascertained, as one was erected, and interest appears to have been calculated from a given date, *and as there was no demurrer based on the insufficiency of the allegations,* we pass the question whether the terms of the contract are stated with the requisite definiteness and certainty, and proceed to consider whether the proof clearly establishes the particular agreement alleged in the amended bill."

The court then proceeded to consider the testimony of the competent witnesses and observed: "While their evidence, consisting of the admissions and declarations of Allen, tends to show that there was some contract of sale and part payment of the purchase money, neither of them professes to know or state any of the terms of the contract, unless it be her husband. To an interrogatory propounded on his direct examination, calling on him to state when and by whom, to whom and at what price, the sale was made, and all the circumstances connected with it, he merely answers, in general terms, 'In 1880, in the latter part of the summer or early fall, this lot of land was sold by Geo. W. Allen to my wife.' On his cross-examination he says he heard Allen say to complainant at the sale: 'I have a lot over yonder, on South side, costing one hundred and fifty dollars. You can have it for the same, and I will put a house on it, and charge you nothing but the actual cost of the building, so that you may have a home for yourself and children.' He fails to state that the complainant at that time accepted or agreed to his proposition. This is left to inference." And in a further discussion of the testimony, the court showed that the testimony of complainant and that of her husband was irreconcilable and in conflict.

In the case of Gachet v. Morton, 181 Ala. 179, 61 So. 817, 818, the decree of the chancellor, denying relief, was affirmed here for the reason as stated in the opinion: "The proof in this case indisputably shows that the first parol contract which was made, and which is alleged in the bill, was subsequently modified by the parties, and modified on account of the refusal of the respondent's wife to join with her husband in the conveyance, the modification being that whereas the original contract of sale was for cash, payable at a time certain, the contract was subsequently changed to the extent of providing that the consideration should be paid only when the vendor's wife would join with the husband in the conveyance. This, of course, was a time very indefinite and uncertain. * * *"

In Hagood v. Spinks, 219 Ala. 503, 122 So. 815, resulting in a decree denying relief, the decree was affirmed for the reason that the testimony was given *ore tenus* and disclosed uncertainty in the acts necessary to take the case out of the statute of frauds.

In Burt v. Moses, 211 Ala. 47, 99 So. 106, 108, an appeal from a decree denying relief was affirmed, for the reason, stated in the opinion: "This timber on the land was a material part of it. The bill alleges it was sold to the complainant with the land. The proof does not sustain the averment. Whether the verbal contract of sale of the land included the timber is in doubt, uncertain, and indefinite from the testimony.

The great weight of the legal evidence on this subject is against this averment in the bill."

In Godsey v. Godsey, 244 Ala. 367, 13 So.2d 406, relief was denied because the complainants failed to show by satisfactory evidence that any part of the purchase money was paid to the vendor. That conclusion of fact was affirmed here by statement in the opinion, 244 Ala. at page 370, 13 So.2d at page 408: "After a careful examination of this record and all the evidence on which submission is had, it results that the decree of the circuit court is in all respects correct and should be affirmed. Affirmed."

We find nothing in any of these decisions requiring anything more than a clear and logical statement *in the pleading* of the terms of the contract of sale as agreed to by the parties and the performance of the acts by the respective parties, necessary to remove the transaction from the influence of the statute of frauds and bring it within the exception provided in the statute. There is nothing in the rules of good pleading in such cases requiring the complainant to allege and prove facts based on mere supposition indulged in by the vendor as to what should have been stated in the alleged agreement.

The testimony of the respondent as to what she told Ruben Thomas as to the terms of the contract and that, "Well, Mrs. Wilson was *supposed* to pay the taxes and interest and upkeep of the house", is incompetent testimony and a mere conclusion of the witness. Brandon v. Progress Distilling Co., 167 Ala. 365, 52 So. 640.

The property, the subject-matter of this litigation, as the evidence goes to show was one of the older residences in the City of Dothan. It was formerly owned by the witness H. L. Faulk, who testified that he was born and reared in said house, 503 Foster Street. Faulk sold and conveyed the property to the respondent in 1945 for $10,000. At the time the dwelling house at the front consisted of ten or eleven rooms and a one room house in the back and a shed used as a garage. The front porch was in a bad state of repair at some points and the re-

spondent after making some repairs to the front porch and screening the same, made several openings to the old residence as a means of entrance to the building by outside stairways and building another story on the one room building in the back, converted the property into a nursing home for old persons, some of whom were indigents, supported by the county on an allowance of fifty dollars per month.

The respondent's testimony shows that she was 63 years of age and just before she contracted to sell, she only had one servant to aid her in keeping the place, who was Ruben Thomas, and she finally decided to sell the property and entered into a contract with Mrs. Wilson, a woman shown to be about forty-two years of age. The compensation paid the indigents supported by the county was the entire allowance for board and nursing, with small supplemental sums for medicine from other sources. One or more of the rooms in the living quarters were rented to persons who paid rent and supported themselves.

The fact that the respondent entered into the contract on June 2, 1949, to sell the property to the complainant Mrs. Wilson and that the purchaser paid in cash the sum of $250, which respondent accepted as a payment on the purchase price, and put the purchaser in possession of the property, is confirmed by the pleadings and established by the undisputed evidence. This removed the verbal agreement from the influence of the statute of frauds. Nolan v. Moore, 254 Ala. 74, 46 So.2d 825.

The legal and competent evidence is in sharp conflict as to the value of the property on June 2, 1949, and as to whether Mr. Wilson was a party to the contract. The range of the opinion evidence as to the value of the property at that time is from $9,000 to $28,000. The testimony of Mr. Wilson is corroborated by his wife and the fact that respondent received payments from Wilson and issued receipts therefor. For some reason not shown the respondent has exercised the right to assess the property for state and county taxes and for the years 1948, 1949 and 1950 she assessed it at the value of $2500.

After reading the testimony embodied in the record of over 300 typewritten pages we are firm in the conclusion that the great weight of the evidence fully supports the allegations of the bill. We are further of opinion that the finding of fact that the down payment agreed to be made was $500 instead of $250, does not constitute a fatal variance between the allegations and the proof, since the undisputed evidence shows that the respondent accepted the payment as such and put the complainants in possession. Robinson v. Wade, 212 Ala. 698, 103 So. 920; Nolan v. Moore, 254 Ala. 74, 46 So.2d 825.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.