49 So.2d 115

**REDWINE v. JACKSON et al.**

**8 Div. 425.**

Supreme Court of Alabama.

June 30, 1950.

Rehearing Denied Dec. 14, 1950.

A. A. Williams, of Florence, and McDonnell & Jones and W. F. McDonnell, of Sheffield, for appellee Jackson.

Guin & Guin, of Russellville, and Rushton, Stakely & Johnston, of Montgomery, for appellant.

LAWSON, Justice.

The appeal is by W. K. Redwine from a final decree of the circuit court of Colbert County, in equity, ordering that land be sold for division of the proceeds among tenants in common; that the proceeds be distributed one-fourth to complainant, W. K. Redwine, one-fourth to respondent T. R. Redwine, and one half to respondent, cross-complainant, Lenora Redwine Jackson; that a purported conveyance to complainant from his brother, R. C. Redwine, deceased, be annulled and vacated in so far as it is a cloud on the title of the respondent, Lenora Redwine Jackson, and that it be cancelled of record.

Mark D. Redwine died intestate on or about December 4, 1938, leaving a tract of land of approximately 960 acres. He was survived by his wife, Mollie Redwine, and by four children by a former wife, namely, W. K. Redwine, R. C. Redwine, T. R. Redwine, and Lenora Redwine Jackson.

The estate of Mark D. Redwine was administered in the probate court of Colbert County and in the course of administration approximately 320 acres of land were set aside to the widow, Mollie Redwine, as dower and homestead.

In the latter part of 1939 Lenora Redwine Jackson instituted proceedings in the circuit court of Colbert County, in equity, against her brothers, W. K. Redwine, R. C. Redwine, and T. R. Redwine, seeking a division in kind of the lands of Mark D. Redwine, other than that part set aside to the widow. While that proceeding was pending R. C. Redwine died testate, leaving all his property to his wife, Lela Redwine. Lela Redwine was substituted as a party respondent in the place of her deceased husband. A decree was rendered partitioning the land involved in that proceeding, approximately 640 acres, one-fourth to Lenora Redwine Jackson,. one-fourth to W. K. Redwine, one-fourth to T. R. Redwine, and one-fourth to Lela Redwine, the widow of R. C. Redwine, deceased.

After the death of Mollie Redwine, this partition proceeding was instituted in the circuit court of Colbert County, in equity, by W. K. Redwine against his sister, Lenora Redwine Jackson, and his brother, T. R. Redwine.

Simply stated, the purpose of the bill was to secure the sale of the 320 acres of land which had been set aside to the widow, Mollie Redwine, for division of the proceeds among the complainant and respondents, as their interests are made to appear.

Under the pleadings and evidence one of the questions presented to the trial court was whether or not there was a necessity for the sale of the land, the respondents contending that it could be divided in kind. The trial court decreed that the lands could not be equitably divided in kind and ordered a sale. But that part of the trial court's decree is not questioned here and no further reference will be made in this opinion to that feature of the case.

As material here, the bill as amended averred in substance that the complainant and the respondents are joint owners or tenants in common in and to the suit property; that "the complainant owns a one half undivided interest in said lands, less

the oil and mineral rights in a one fourth undivided interest therein, which mineral and oil interests are owned by the respondent Lenora Jackson, same having been reserved by deed from R. C. Redwine to W. K. Redwine, dated July 5, 1939, and appearing of record in the office of the Judge of Probate of Colbert County, Alabama, in deed record No. 126, page 488. The respondent T. R. Redwine, owns a one fourth undivided interest in said lands and the respondent Lenora Jackson owns a one fourth undivided interest in said lands in fee simple and also, the oil and mineral interest in the undivided fourth originally owned by *T. R.* Redwine, and now owned by the respondent Lenora Jackson." (Emphasis supplied) It is clear that the initials which we have put in italics were intended to be *R. C.*

The material part of the prayer of the bill as amended was, in substance, that the lands be sold and that the proceeds be divided in accordance with the interests of the parties to the suit as averred in the bill as amended.

The respondent, Lenora Redwine Jackson, filed her answer which she asked to be taken as her cross bill. She admitted that the complainant and the respondents are the owners of the suit property. She admitted that the interest of the respondent T. R. Redwine is correctly averred in the bill as amended, namely, an undivided one-fourth interest. She denied that the bill correctly averred her interest in the land and that of the complainant and averred that her interest in the land was a one-half undivided interest and that of the complainant was only a one-fourth undivided interest. She averred further, "that the only interest of complainant in said lands is an undivided one fourth interest which he inherited from his father, Mark Redwine; that respondent is advised that complainant is claiming an additional one fourth interest in said lands owned by R. C. Redwine, now deceased, but respondent avers that such claim is unfounded and that the deed alleged to have been executed from R. C. Redwine to W. K. Redwine is wholly fictitious and void and was never legally executed and that complainant took

nothing by reason of said fictitious, fraudulent and forged deed."

As amended, the answer and cross bill of the respondent Lenora Redwine Jackson, in pertinent part, prayed as follows: "That upon the final hearing of this cause your Honor will order, adjudge and decree that this Respondent is the owner of the legal title to an undivided one-half interest in the lands described in the bill of complaint; that W. K. Redwine owns an undivided one-fourth interest and T. R. Redwine an undivided one-fourth interest in said lands. This Respondent and Cross-Complainant further prays that the alleged deed from R. C. Redwine to W. K. Redwine dated July 5, 1939 and recorded in Book 126 of deeds page 486 and again recorded Book 131 pages 550 and 551 of deeds, in the office of the Judge of Probate of Colbert County, Alabama, be declared null and void and constitutes a cloud on this Respondent's title and that the Register of this Court be ordered and directed to enter on each of the recordings of said deed that the same has been declared null and void by the decree of this Court."

The complainant, W. K. Redwine, answered the cross bill of the respondent Lenora Redwine Jackson by denying the averments of the said cross bill.

The respondent, T. R. Redwine, in his answer, admitted the averments of the bill as amended in so far as it averred his interest in the suit property, but denied the averments as to the interest in the property owned by the complainant, W. K. Redwine.

So, under the pleadings, it was admitted that the complainant and each of the respondents owned an undivided one-fourth interest in the suit property, which they had inherited from their father, Mark Redwine, subject to the dower and homestead rights of their stepmother, Mollie Redwine.

The real controversy was between the complainant, W. K. Redwine, and his sister, the respondent, cross-complainant, Lenora Redwine Jackson. The subject of the controversy was the undivided one-fourth interest in the suit property which their brother, R. C. Redwine, had inherited

from their father, subject to their step-mother's dower and homestead rights.

The complainant claimed ownership of that undivided one-fourth interest, except the oil and mineral rights, by virtue of a conveyance from his brother, R. C. Redwine, under date of July 5, 1939.

The respondent Lenora Redwine Jackson sought to show that no such conveyance was executed; that at the time of his death, their brother, R. C. Redwine, still owned the interest in the 960 acres which he had inherited from his father; that such interest under the terms of the will of the said R. C. Redwine went to his wife, Lela Redwine; that the said Lela Redwine, as the devisee of her deceased husband, received one-fourth of the 640 acres as a result of the 1939 partition proceedings; that the said Lela Redwine died testate owning the same interest in the 320 acres here involved as her husband, R. C. Redwine, had owned; that under the terms of the will of Lela Redwine this interest went to her mother, Mrs. Bobbie Ware, for life, with remainder to Lela Redwine's brothers, Richard T. Ware and George Willard Ware; that on November 4, 1943, the mother and brothers of Lela Redwine conveyed to the respondent Lenora Redwine Jackson "the interest of R. C. Redwine, deceased, in the estate of his father, Mark D. Redwine and which interest R. C. Redwine devised to his wife, Lela E. Redwine, now deceased, and she, in turn, devised to the grantors herein."

The material parts of the decree of the trial court may be summarized as follows: (1) that the complainant and the respondents were tenants in common of the suit property; (2) that each of the three parties to the suit owns an undivided one-fourth interest in the suit property by virtue of inheritance from their deceased father, Mark Redwine; (3) that the respondent, cross-complainant, Lenora Jackson, is also the owner of the undivided one-fourth interest in the suit property which was inherited by her deceased brother, Rufus C. Redwine, from his father, Mark Redwine, and devised by Rufus C. Redwine to his wife, Lela E. Redwine, and devised by Lela E. Redwine to her mother, Mrs. Bob-bie Ware, for her life, with remainder to her brothers, Richard T. Ware and George Willard Ware, and conveyed by Mrs. Bobbie Ware, Richard T. Ware, and George Willard Ware to the respondent Lenora Redwine Jackson; (5) that the purported deed or contract from said R. C. Redwine to W. K. Redwine dated July 5, 1939, and recorded in the office of the probate judge of Colbert County, be annulled, cancelled and held for naught in so far as it constitutes a cloud on the title of Lenora Redwine Jackson, in and to the undivided interest formerly owned by R. C. Redwine, which the said R. C. Redwine procured by inheritance from his father, Mark Redwine.

From the decree against him the complainant, W. K. Redwine, has appealed to this court. The eight assignments of error may be grouped as follows: (1) that the trial court erred in holding that the respondent Lenora Redwine Jackson, and not the complainant, W. K. Redwine, is the owner of the undivided one-fourth interest in the suit property formerly owned by their brother, R. C. Redwine, deceased; (2) that the trial court erred in annulling and holding for naught, in so far as it constitutes a cloud on Lenora Jackson's title, the instrument which complainant contends his brother, R. C. Redwine, executed on July 5, 1939, purporting to convey his undivided one-fourth interest in the suit property to the complainant, and in ordering that said instrument be cancelled of record.

The evidence was not taken orally before the trial court; hence we indulge no presumption as to findings of fact. It is our duty to sit in judgment on the evidence. Butler v. Guaranty Savings & Loan Association, 251 Ala. 449, 37 So.2d 638.

In sitting in judgment on the evidence in this case, we are confronted with the problem of ascertaining that part of the evidence offered, which, under existing laws, we may consider in determining the rights of the parties under the pleadings.

The complainant, testifying in his own behalf, gave evidence as to transactions with and statements by his deceased brother, R. C. Redwine, including the statement that he saw his brother execute the instru-

ment under which he now claims his brother's interest in the suit property, and that he saw two witnesses subscribe their names to the instrument.

There are two questions which must be answered relative to this line of testimony of the complainant: First, was he competent to testify thereto? Second, if incompetent, must we nevertheless consider his testimony because of the failure of the trial court to expressly rule on objections interposed by counsel for the respondent, Lenora Redwine Jackson?

█ The complainant was not a competent witness as to this line of testimony, in view of the provisions of § 433, Title 7, Code 1940, which section reads as follows: "In civil suits and proceedings, there must be no exclusion of any witness because he is a party, or interested in the issue tried, *except that no person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding,* or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed, or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness, or has been taken and is on file in the cause. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another." (Emphasis supplied)

Appellant, complainant below, insists that the provisions of § 433, Title 7, supra, do not operate to make him an incompetent witness as to transactions with and statements made by his deceased brother which bear upon the execution of the deed under which complainant claims, for the reason that the estate of the deceased is no longer interested in the outcome of the suit. True, the respondent—cross-complainant—Lenora

Redwine Jackson, claims under purchase from the mother and brothers of Lela Redwine, who were the devisees under the will of the said Lela Redwine, who in turn was the devisee under the will of R. C. Redwine, deceased. But this does not remove the bar of the statute. We have held in several cases that the bar or rule of exclusion applies to protect those claiming in succession to the deceased the same as to the estate of the deceased, when the other conditions exist. It is obvious, of course, that those conditions do exist. Federal Land Bank v. Curington, 233 Ala. 263, 171 So. 361; Goodgame v. Dawson, 242 Ala. 499, 7 So.2d 77, and cases there cited. See also Niehuss v. Ford, 251 Ala. 529, 38 So.2d 484.

As before indicated, although the complainant was an incompetent witness as to this kind of testimony, we are still confronted with the question as to whether or not we must consider that portion of his testimony on this appeal.

Section 372(1), Title 7, Code 1940, 1947 Cum. Pocket Part, Vol. Two, p. 44, provides in substance that in cases such as this it is unnecessary that objection be made to any testimony or evidence which may be offered by either party and on the consideration of such cases the trial court should consider only such testimony as is relevant, material, competent and legal, and on appeal this court shall consider only such testimony as is relevant, material, competent and legal, unless specific objection was interposed and a ruling made on such objection by the trial court. Pollard v. Simpson, 240 Ala. 401, 199 So. 560.

Section 372(1), Title 7, Code 1940, is practically in the language of Act No. 101, approved June 8, 1943, General Acts 1943, p. 105. The 1943 act, supra, is in most material respects in the language of § 6565, Code of 1923, the provisions of which were not brought forward in the Code of 1940. The language of the 1943 act, supra, is somewhat broader than that of § 6565, Code 1923.

In the instant case, counsel for Lenora Redwine Jackson objected to this line of testimony by the complainant at the time

the evidence was elicited on the ground that he was an incompetent witness in that respect. Written objections were filed, which were included in the note of testimony or note of submission. However, the trial court did not specifically rule on those objections, but the decree of the trial court contains language indicating that it considered only legal evidence.

Since the trial court did not rule on the objections interposed by counsel for the appellant, must we on this appeal consider that evidence? This question is provoked by the decision of this court in the case of Warner v. Warner, 248 Ala. 556, 28 So.2d 701, and the decision in Crum v. Crum, 253 Ala. 163, 43 So.2d 392.

In Warner v. Warner, supra, a majority of the court held in substance that the statute regulating practice in equity cases, § 372(1), Title 7, Code 1940, in matter of objection to and consideration of evidence does not relieve parties from making specific objections to the competency of witnesses who are incompetent to testify as to transactions with and statements by a deceased person. It was there said: "The testimony of Mary A. Warner and the exhibits thereto which we have noted above and the other exhibits offered by the respondent were not objected to by complainants, and they were interested in the issues involved, and had a right to waive the rule of exclusion when the testimony was offered by their adversary. We think there can be no doubt that the sole owner of the estate left by a decedent is the only person interested in the rule, may waive it, and did waive it in the case at bar by failing to object to the competency of the witness called to testify against them by their adversary. Rogers v. Austill, et al., 213 Ala. 163, 104 So. 321; Butler v. Jones, 80 Ala. 436, 2 So. 300; Hendricks v. Kelly, 64 Ala. 388, 391. But the Act entitled 'An Act to regulate the practice in equity cases in the matter of objection to and consideration of testimony and evidence,' Act 101, 1943 Regular Session, p. 105, Code 1940, Tit. 7, § 372(1), does not relieve the parties from making specific objections to the competency of witnesses, and therefore does not save the waiver of the statutory

rule. Des Portes v. Hall et al., 238 Ala. 641, 192 So. 899; 70 C.J. 184, § 252, p. 372, § 490; 28 R.C.L. p. 448, § 35; 20 Am. Juris. p. 246, § 253." 248 Ala. 563, 28 So.2d 707.

The writer concurred in the dissenting opinion of Chief Justice Gardner, which was to the effect that the provisions of the 1943 act, supra, have application to the testimony of a witness who is incompetent to testify because of the provisions of § 433, Title 7, supra. However, the writer has followed the holding of the majority in the case of Warner v. Warner, supra, in this respect in the case of Adams v. Griffin, 253 Ala. 371, 45 So.2d 22.

The case of Crum v. Crum, supra, followed and extended the rule in the holding of Warner v. Warner, supra. In the Crum Case objections were made as to the competency of a witness as to statements made by a deceased because of the witness's pecuniary interest in the result of the suit. These objections were filed before the submission of the cause and called to the attention of the court by being referred to in the note of testimony. However, no ruling on such objections was made by the court and it was held that for that reason the testimony of the alleged incompetent witness had to be considered by us. The writer concurred in that opinion.

We are now fully convinced, after mature consideration, that the holding in Warner v. Warner, supra, pointed out above, is erroneous and that it and those cases which have followed it should to that extent be no longer followed.

None of the cases relied upon in the majority opinion in Warner v. Warner, supra, support the conclusion there reached as to the point now under consideration.

The case of Rogers v. Austill, 213 Ala. 163, 104 So. 321, does hold that the sole owner of an estate left by a decedent is the only person interested in the rule of exclusion and may waive it. It was held that there was a waiver in that case, but not because of a failure of an objection, but because the only person interested in the rule of exclusion conceded complain-

ant's right to relief. In fact, she confessed the bill and even went so far as to suggest to this court that the decree dismissing the bill should be reversed to the end that appellant, complainant below, might have the relief to which, in her opinion, he was entitled.

The cases of Hendricks v. Kelly, 64 Ala. 388, and Butler v. Jones, 80 Ala. 436, 2 So. 300, both held that the so-called "dead man's statute" had no application to the witnesses claimed to be incompetent. The decisions in those cases did not in any wise deal with the necessity of objections and rulings thereon, and in fact were decided long before there were any such provisions as are now found in § 372(1), Title 7, Code 1940. We might observe at this point that the provisions of § 6565, Code 1923, § 372(1) Title 7, Code 1940, supra, first appeared in an act approved September 28, 1923, General Acts 1923, p. 631.

The case of Des Portes v. Hall, 238 Ala. 641, 192 So. 899, involved a bill filed by an existing creditor to vacate a deed to lands made by the debtor to his wife and son and to subject the lands to the payment of the debt, alleging the recited consideration was simulated, that in fact the conveyance was voluntary, without valuable consideration. The main argument presented on the appeal was that the answer to the bill was insufficient to present the issue of valuable consideration; that proof without averments would not sustain the defense as against the prima facie case made by the bill, supported by proof of the claimant's existing indebtedness to complainant. In part we said:

"There was no exception to the answer. Our Chancery Rule 34 eliminates exceptions to unsworn answers.

"Neither was there objection to any of the testimony, calling attention to any defect in the answer.

"Our Statute, Code, § 6565 [Code 1923], requiring the court in equity causes to 'consider only such testimony as is relevant, material and competent' is not intended to strike out evidence subject to objection only on special grounds. Where, as here, the answers sets forth in substance a complete defense and is objectionable only for lack of fulness and clearness in matters of detail, the trial court will not be put in error where no objection to pertinent evidence was interposed, nor the court otherwise apprised of the point first raised on appeal." 238 Ala. 645, 192 So. 901.

The above quotation is the only reference in that opinion to § 6565 of the Code of 1923 and there was no question in that case as to the incompetency of a witness to testify because of the provisions of § 7721, Code of 1923, the "dead man's statute."

Neither the majority nor the dissenting opinion in the case of Warner v. Warner, supra, makes any reference to several cases which had been previously decided by this court, which clearly show that this court had construed the provisions of § 6565, Code 1923, as applicable to testimony given by a witness who was incompetent because of the provisions of § 7721, Code 1923, the "dead man's statute." There are at least two cases decided since the effective date of the 1943 act, § 372(1), Title 7, Code 1940, and prior to the decision in the Warner Case, which definitely demonstrate that this court considered the provisions of the 1943 act, supra, as applicable to a witness incompetent to testify because of the provisions of the so-called "dead man's statute," now codified as § 433, Title 7, Code 1940.

The case of Moore v. Moore, 212 Ala. 685, 103 So. 892, was decided in 1925. In an opinion prepared for the court by Mr. Justice Sayre, it clearly appears that this court considered the provisions of § 6565, Code 1923, as being applicable to a witness incompetent to testify because of the provisions of § 7721, Code 1923, supra. It was there said:

"Appellant insists that appellees, Mexico Moore and her children, are incompetent to testify in this cause by reason of section 7721 of the present Code, section 4007 of the Code of 1907. The rule of the section does not operate to close the mouth of a witness as to any matter of fact coming to his knowledge in any other way than through personal dealings with the deceased or communications made by the deceased to the witness in person. Warten v. Black, 195 Ala. 97, 70 So. 758.

This rule does not exclude evidence of acts of possession. *Again noting the fact that the issue in this cause is whether the deeds under which the parties claim correctly represent the transaction between the grantor, J. W. Moore, and his sons, the rule of exclusion on account of pecuniary interest would operate to take out of consideration, not only parts of the testimony of Mexico Moore, but also the most material part of appellant's testimony, to wit, that part of it in which he states a transaction between his brother and himself in and by which, as he says, the dividing line between them was agreed upon, and, while there were no specific rulings on evidence, the statement of the trial court is that competent evidence only was considered. This method of consideration was in accord with the prescription of section 6565 of the Code, and so the cause must be considered on this appeal.*" (Emphasis supplied) 212 Ala. 686, 103 So. 893.

In Milton Realty Co. v. Wilson, 214 Ala. 143, 145, 107 So. 92, 93, it was said, in part, as follows: "The testimony sought to be elicited from Tribble as to his transaction with Stewart, the agent and attorney of complainants, after the death of Stewart, is protected by the provisions of section 7721 of the Code of 1923. * * * *No objection to the evidence was required by the statute.* Code, section 6565; Moore v. Moore, 212 Ala. 685, 103 So. 892; * * *" (Emphasis supplied)

In Copeland v. Warren, 214 Ala. 150, 107 So. 94, such construction appears from the following statement in the opinion: "Assignment of error is predicated upon the assumption that the trial court considered illegal testimony in reaching the conclusions expressed in the final decree. There is evidence to sustain the decree, aside from the depositions of complainant, L. P. Warren. And, *in view of the provision of section 6565 of the Code of 1923, the reviewing court will presume that the trial court followed the statute.* * * *" (Emphasis supplied) 214 Ala. 154, 107 So. 97.

The contention was that the complainant, Warren, was an incompetent witness be-cause of the exclusion provisions of § 7721, Code 1923.

The case of Patterson v. Johnson, 225 Ala. 401, 143 So. 560, was a bill in equity by Patterson and others against Johnson and others. The purpose of the bill was to have lands sold for division of the proceeds among tenants in common. The alleged tenants in common were the heirs at law of Thomas and Eliza Patterson, deceased. The respondent Johnson claimed title to 120 acres of the 180-acre tract involved by virtue of a deed from Thomas and Eliza Patterson. It was because of that claim that he was made a party respondent and as to him the bill sought to quiet title. The respondent Johnson, by answer and cross-bill, set up his claim to an absolute title to the 120-acre tract. There was a decree for the cross-complainant, Johnson. The complainants appealed.

Johnson, as a witness, was permitted to testify as to a transaction with the deceased. There were objections to his competency as a witness to such transaction with deceased persons whose estate was interested. Such objections were noted in the submission. It does not appear that there was any ruling on such objections.

That this court did not consider such objections necessary is clearly demonstrated by the following language of the opinion: "Disregarding this testimony as illegal, the competent evidence fully warranted the decree rendered for reasons above stated. Code, § 6565." (Emphasis supplied) 225 Ala. 402, 143 So. 561.

That this court considered the provisions of § 6565 of the Code of 1923 to be applicable to thte testimony of a witness incompetent to testify under the provisions of § 7721 of the Code of 1923 is clearly and definitely shown by the following quotation from the case of O'Rear v. Kimbro, 227 Ala. 22, 24, 148 So. 435, 437: "There is in the record much testimony given by the complainants, O'Rear and Stubblefield, which was incompetent, and cannot be considered. *Under the plain terms of section 7721 of the Code, the complainants—mortgagors—having a pecuniary interest in the*

result of the suit, could not testify as to 'any transaction with, or statement by A. A. Pearce, whose estate was, and is, interested in the result of this suit.' As was observed by Brickell, C. J., in Boykin v. Smith, 65 Ala. 294, 299: 'If death has sealed the lips of one party, the law intends, as to this species of evidence, to seal the lips of the living.' Jernigan v. Gibbs, 206 Ala. 93, 94, 89 So. 196. *And by section 6565 of the Code, it is provided that, in the trial of equity cases, the court shall consider only such testimony as is 'relevant, material and competent, and shall exclude and not consider any testimony which is irrelevant, immaterial or incompetent, whether objection shall have been made thereto or not, and on appeal the supreme court shall consider only the testimony which is relevant, material and competent.'"* (Emphasis supplied)

We have examined the original transcript in the case of O'Rear v. Kimbro, supra, and find that no objection was interposed or noted in the note of testimony as to the incompetency of the witnesses.

To like effect is the case of Patterson v. First National Bank of Piedmont, 229 Ala. 406, 157 So. 446, written for the court by Mr. Justice Gardner, now Chief Justice. It was there said:

"Much evidence was offered, by each side, which was incompetent and illegal in the light of our statute. Section 7721, Code 1923.

"The chancellor gave full recognition to the statute, and the record shows that he disregarded such incompetent and illegal evidence, and rested his decision only upon the competent and legal evidence in the case. Section 6565, Code 1923; Mink v. Whitfield, 218 Ala. 334, 118 So. 559; Moore v. Moore, 212 Ala. 685, 103 So. 892.

"These witnesses were not incompetent, however, as to all the facts testified to by them, such as collateral matters not involving a transaction with or a statement by the deceased. Moore v. Moore, supra.

"We have here also carefully considered only the competent and legal proof. * * *" 229 Ala. 409, 157 So. 448.

The case of Scott v. McGill, 245 Ala. 256, 16 So.2d 866, was decided in February, 1944. The notes of testimony on submission were filed subsequent to the approval of the 1943 act, supra, Acts 1943, p. 105, and it was held that the case on appeal was governed by that statute. One of the contentions was that certain witnesses who gave evidence were incompetent to testify because of the provisions of the "dead man's statute." It was held that they were incompetent to so testify. The opinion contains the following language: "The trial court made no ruling on evidence considered by him. To sustain his decree, this court may assume he considered only legal evidence." 245 Ala. 259, 16 So.2d 868.

The case of Sansom v. Sturkie, 245 Ala. 514, 18 So.2d 267, was decided in May, 1944, only a comparatively short time prior to the decision in the case of Warner v. Warner, supra. The following quotation from the opinion is diametrically opposed to the holding in the case of Warner v. Warner, supra, which is here under consideration. "The final decree of August 9, 1943, was after the Code of 1940 became effective on May 31, 1941, which omitted Section 6565 of the Code of 1923, effecting its repeal. Askins v. State ex rel. Johnson, 244 Ala. 455, 14 So.2d 156. This statute was, however, reenacted by the legislature of 1943, p. 105, approved on June 8, 1943, Code 1940, Title 7, § 372(1), before the submission on August 5, 1943, for final decree. In the rendition of the instant decree the trial court, sitting in equity, was not required to pass upon the motion to exclude the illegal evidence of the complainants Sansoms, but was under the statute confined to consideration of such testimony before him as was relevant, material, competent and legal, as to the transactions with the deceased by complainants, as to matters pertinent to this decision." 245 Ala. 520, 18 So.2d 273.

There is no doubt that the holding in the Warner Case here involved is contrary to the legislative intent as well as to the rule which this court had consistently followed prior thereto. True, this court

should do all within its power to follow a consistent course. But where, as here, it is apparent that a holding which has been in the books only a comparatively short time is clearly wrong, and upsets a rule of long standing, we feel that this court should not hesitate to depart therefrom. We are fully convinced that the rule of the case of Warner v. Warner, 248 Ala. 556, 563, 28 So.2d 701, with which we are here concerned, should be overruled and no longer followed. This, of course, applies to the few equity cases which have followed Warner v. Warner, supra, in this respect, which includes Adams v. Griffin, 253 Ala. 371, 45 So.2d 22; Crum v. Crum, 253 Ala. 163, 43 So.2d 392.

 In view of the foregoing, we have not on this appeal considered that part of the testimony of complainant, W. K. Redwine, to which the exclusion provisions of § 433, Title 7, Code 1940 ("dead man's statute"), have application.

We come now to consider the question as to whether there is any competent and legal evidence which shows a conveyance from R. C. Redwine to the complainant, W. K. Redwine, as alleged by complainant.

No such original conveyance was offered in evidence. Complainant testified that such a conveyance had been in his possession but that, in 1944 or 1945, while he was in a hospital in Memphis, Tennessee, the conveyance "disappeared."

No competent witness testified in person at the trial of this case as to the execution of such a conveyance.

 The complainant offered in evidence a certified transcript of a record of the probate office of Colbert County showing the recordation of an instrument, dated July 5, 1939, bearing the name R. C. Redwine, as grantor, which purported to convey to W. K. Redwine, for a consideration of $1250, the interest owned by R. C. Redwine in certain described property, including the suit property, except the oil and mineral rights therein.

Complainant claims that by virtue of the provisions of § 104, Title 47, Code 1940, such transcript was admissible in evidence without further proof of the execution of the conveyance, that is, it was self-proving. Section 104, Title 47, Code 1940, reads as follows: "Conveyances of property, real or personal, or any interest therein, whether absolute or on condition, which are acknowledged or proved according to law, and recorded, may be received in evidence in any court without further proof; and if it appears to the court that the original conveyance has been lost or destroyed, or that the party offering a transcript, had not the custody or control thereof, the court must receive the transcript, duly certified, in the place of the original, unless the reputed maker is in bona fide possession of the property, and makes and files an affidavit that the said conveyance is a forgery."

The certified transcript shows that the purported conveyance above described was first filed for record on July 19, 1943. It bore no acknowledgment of the grantor, but the names of C. M. Jenkins and J. K. Dean appeared thereon as witnesses. Since it was so witnessed, the purported conveyance complied in form with § 22, Title 47, Code 1940, which relates to conveyances of real estate. Turk v. Turk, 206 Ala. 312, 89 So. 457.

Although in sufficient compliance with § 22, Title 47, supra, it was not self-proving at the time it was recorded on July 9, 1943, because there was no acknowledgment of the grantor, nor was it "proved according to law." Conveyances are not self-proving by reason of recordation unless acknowledged or proved according to law. Section 104, Title 47, Code 1940; Niehuss v. Ford, 251 Ala. 529, 38 So.2d 484.

But the certified transcript further shows that the purported conveyance was re-recorded on January 9, 1945, and as re-recorded the transcript shows the following certificates of probate, which are in the form prescribed by § 31, Title 47, Code 1940:

"State of Florida
Dade County

"I, Evelyn McClure, a Notary Public in and for said state and county, hereby certify that C. M. Jenkins, a subscribing witness

to the foregoing conveyance, known to me, appeared before me on this day and being sworn, stated that R. C. Redwine, the grantor, voluntarily executed the same in his presence, and in the presence of the other subscribing witness, on the day the same bears date; that he attested the same in the presence of the grantor and the other witness, and that such other witness subscribed his name as a witness in his presence.

"Given under my hand this the 3 day of January 1945.

Evelyn McClure, Notary Public
My commission expires April 5, 1945"

"Seal

"State of Florida

Duval county

"I, Wiley Pope, a Notary Public in and for said State and County, hereby certify that J. K. Dean, a subscribing witness to the foregoing conveyance, known to me, appeared before me on this day, and being sworn, stated that R. C. Redwine, the grantor, voluntarily executed the same in his presence, and in the presence of the other subscribing witness, on the day the same bears date; that he attested the same in the presence of the grantor and of the other witness, and that such other witness subscribed in his name as a witness, in his presence.

"Given under my hand this the 2nd day of January, 1945.

Wiley Pope
Notary Public

"Seal

"Notary Public, State of Florida at Large. My commission expires Sept. 28, 1948. Bonded by American Surety Co. of N. Y."

Appellee, Lenora Redwine Jackson, contends that the purported conveyance was not proved according to law and that, therefore, the certified transcript was not admissible without further proof of the execution of the said conveyance. Her argument is that, although a seal appears on each of the certificates of probate, that, since the certificates purport to have been executed in the State of Florida by notaries public of that state, they are inefficacious to make the instrument self-proving because the purpose of the notary to affix his seal does not appear in his certificate, nor does he certify that the seal is or was his official seal, or that it was so affixed or made by him as such notary.

In support of this contention reliance is had upon the case of Dawsey v. Kirven, 203 Ala. 446, 83 So. 338, 7 A.L.R. 1658. In that case is appears that Kirven, the holder of negotiable promissory notes, brought suit against Dawsey and others, the makers thereof. The defendants pleaded the general issue and a special sworn plea denying plaintiff's ownership of the notes. There was judgment for plaintiff, from which defendants appealed. It was contended by the appellants that the trial court erred in admitting into evidence a power of attorney purporting to have been executed by one Mrs. M. F. Clements to one F. D. Kirven, the husband of plaintiff, authorizing him, as her agent and attorney, to make loans, collect monies, satisfy mortgages of record, assign and endorse notes, mortgages, etc. The reason urged as to why the admission in evidence of the power of attorney was error was that the notary's certificate or acknowledgment of the execution of the power of attorney was not authenticated by the notarial seal of the officer, he being an officer of another state, to wit, Georgia, and the acknowledgment and certificate being made in that state. On original submission it was thought to be unnecessary to consider that question. The judgment of the trial court was affirmed. On rehearing, it was held that such question was necessary to a determination of the case and it was further held that the trial court erred in admitting the power of attorney in evidence, the application for rehearing was granted, and the judgment reversed. The basis for this holding is shown in the following quotation from the opinion written on rehearing:

"It is insisted that, the power of attorney being executed in the state of Georgia, it was not self-proving. The execution of the power of attorney purports to be under the seal of the grantor, and purports to be acknowledged before a notary in the state of Georgia; and a notarial seal or scroll appears on the instrument. But the

acknowledgment of the notary does not refer to the seal, nor does he certify that it was given 'under his seal,' official or otherwise, but only that it was given under 'his hand.' The question therefore is presented: Was the execution of the instrument sufficiently proven by the acknowledgment of a foreign notary under his official seal? In other words, was the acknowledgment before a notary properly and legally authenticated by his official seal? While there is on the instrument what purports to be a seal, the notary does not certify that it is his official seal, and makes no reference whatever to it either in the body of the certificate or in the jurat thereof, but the certificate purports to be under 'his hand' only, but not under 'his seal.'

"Under our decisions we feel compelled to hold that the power of attorney was not self-proving. The notary's certificate was not attested by his official seal. While this court has repeatedly held that instruments the execution of which were acknowledged before foreign notaries, whose certificates of acknowledgment were attested by official seals, were self-proving, yet we have never held that affixing a mere scroll or wafer, purporting to be a seal, without any reference thereto by the officer in the body of his certificate, or in the jurat thereof, was sufficient authentication to make it self-proving. See Hart v. Ross, 57 Ala. 518, 520; Alabama Nat. Bank v. Chattanooga Door & Sash Co., 106 Ala. 663, 18 So. 74; Goree v. Wadsworth, 91 Ala. 416, 8 So. 712; Hill v. Norris, 2 Ala. 640; Toulmin v. Austin, 5 Stew. & P. 410.

\* \* \* \* \* \*

"We therefore hold that the purpose of the notary to affix his seal must appear in his certificate; otherwise the scroll or impression purporting to be a seal may have been placed on the document by another, and without the knowledge or official act of the notary. In other words, we, or the trial court, are not authoritatively informed that the certificate of acknowledgment of the foreign notary was by him authenticated by his official seal. There is no certificate that the scroll or impres-

sion is or was his official seal, or that it was so affixed or made by him as such notary.

"It therefore results that it was error to admit the power of attorney in evidence, and the judgment below should be reversed. The application for rehearing is therefore granted, the judgment of affirmance set aside, and one of reversal rendered." 203 Ala. 449, 83 So. 340.

But appellant argues that the rule of Dawsey v. Kirven, supra, which case was decided in 1919, is not controlling in the instant case because of the provisions of § 28, Title 47, Code 1940, which provisions were new to the Code of 1923, and were incorporated therein as § 6843. Section 28, Title 47, supra, reads as follows:

"All deeds, powers of attorney, and other instruments of conveyance, affidavits or contracts purporting to be acknowledged, proved or verified as prescribed by law, and which have been recorded or may hereafter be recorded, in the office of the judge of probate of the proper county in this state, and transcripts thereof from such record, shall be prima facie evidence that the seal of such officer acknowledging or attesting such instrument was his official seal, and that it was affixed by him in his official capacity; and all such instruments and certified copies thereof shall have the same force and effect and shall be received in evidence in any court in this state without further proof of the due execution of such instrument or proof of the seal of any officer so certifying or attesting, and that the same was affixed by him as his official seal, in his official capacity, whether he be an officer of this state, or of any other state, territory or district of the United States."

The language of the section quoted above is clear and unambiguous and seems to make the rule of Dawsey v. Kirven, supra, inapplicable as to instruments of the kind named in the section which have been recorded properly.

In the instant case, a seal was affixed to each of the certificates of probate. So, under the express language of § 28, Title 47, supra, the transcript of

the records of the probate office of Colbert County, showing that a seal was affixed to the certificates, is prima facie evidence that the seal was that of the notary public and that it was affixed by him in his official capacity.

In briefs filed here on behalf of appellees, it is strenuously argued that although the language of § 28, Title 47, supra, seems to lead to the conclusion which we have reached above, that this court has refused to so construe that section in two cases, namely, Knight v. Hill, 212 Ala. 280, 102 So. 221, and Copeland v. Dabbs, 221 Ala. 489, 129 So. 88. We have given careful consideration to the opinions of this court, as well as to the original transcripts, in those cases and are clear to the conclusion that the holdings in those cases did not turn on the provisions now codified as § 28, Title 47, Code 1940.

The case of Knight v. Hill, supra, was decided by this court on December 4, 1924. The 1923 Code went into effect on August 17, 1924. Section 6843, Code 1923, was in the exact language of what is now § 28, Title 47, Code 1940. But the provisions of § 6843, Code 1923, had no application to the question considered in Knight v. Hill, supra, for the reason, if for no other, that the judgment from which the appeal was taken to this court was rendered and entered prior to the time the 1923 Code went into effect. As before indicated, the provisions of § 6843, Code 1923, were new to that Code. But § 6843, Code 1923, is based on the provisions of Act No. 82, approved October 5, 1920, General and Local Acts, Special Session, 1920, p. 135. In codifying the provisions of the said 1920 act, the Code Commissioner broadened its scope. The 1920 act was in effect at the time rights of the parties in Knight v. Hill, supra, became fixed. However, the 1920 act, supra, had application only to "deeds and other instruments of conveyance." The instrument involved in the case of Knight v. Hill was a claim or statement, filed in the office of the probate court of Randolph County, for the purpose of establishing a mechanic's lien, which claim was purported to have been certified by a notary public of the state of Georgia. It is clear, therefore, that the

provisions of the said 1920 act, supra, had no application. In holding that the statement or claim was improperly admitted in evidence, the court followed the rule of Dawsey v. Kirven, supra, which rule was not affected by the said 1920 act, supra, except as to "deeds and other instruments of conveyance, acknowledged or proved as prescribed by sections 3361, 3362 and 4161 of the Code of Alabama of 1907 before and by officers named in section 3359 of the Code of Alabama of 1907 beyond the State of Alabama, but within the United States, heretofore executed and which have been recorded in the office of the judge of probate of the proper county in this State, before the passage of this Act or within two years after the approval thereof, * * *." Act No. 82, approved October 5, 1920, General and Local Acts, Special Session, 1920, p. 135.

In Copeland v. Dabbs, supra, decided in 1930, a majority of the court held that the instrument put in evidence and upon which the complainant's right to recover depended, "showed a valid deed, provable, though not self-proving." [221 Ala. 489, 129 So. 92] An acknowledgment of one of the grantors had been taken before an Arkansas notary public. This acknowledgment was witnessed in this language, "I hereunto set my hand." True, it does not appear that any reference was made in the notary's certificate of his purpose to affix a seal. In fact, it does not appear that a seal was affixed and, furthermore, it does not appear that the deed was recorded. It follows, therefore, that the deed could not have been held to be self-proving under the provisions of § 6843, Code 1923, now § 28, Title 47, Code 1940.

In Autauga Co-operative Leasing Ass'n v. Ward, 250 Ala. 229, 33 So.2d 904, the case of Dawsey v. Kirvin, 203 Ala. 446, 83 So. 338, is cited in support of the following statement: "The instrument must declare in its body that its corporate seal is affixed to make the seal effectual." 250 Ala. 234, 33 So.2d 908. We were there dealing with the sufficiency of an assignment of a lease purported to have been made by a corporation acting through its agent. We point out that the question as

to whether or not the instrument was self-proving under the provisions of § 28, Title 47, Code 1940, was not involved.

We hold that no defect appears on the face of the certificates of probate such as to require a holding that the conveyance was not proved according to law, and that, therefore, the certified transcript was admissible in evidence without further proof of the execution of the conveyance. Sections 28, 31, 104, Title 47, Code 1940.

Appellee insists that although the certificates of probate may appear on their face to have been properly executed so as to make the transcript admissible in evidence without further proof of the execution of the deed, it appears that the certifying officers, the Florida justices of the peace, did not have jurisdiction in that the evidence shows that the deed was not before the notaries public and the alleged witnesses at the time the certificates were executed.

We think that the act of executing a certificate of probate is the exercise of a judicial function, but, like a certificate of acknowledgment it may be impeached as a fabrication where the certifying officer did not have jurisdiction of the party or subject matter. Fies & Sons v. Lowery, 226 Ala. 329, 147 So. 136, and cases cited. But much weight must be accorded to the certificate and it should only be set aside by evidence that is clear and convincing. Fies & Sons v. Lowery, supra.

The certificates of probate with which we are here concerned are to the effect that the deed was before the notaries public and each of the affiants at the time the certificates were executed. We do not think it necessary to set out the evidence upon which appellee, Lenora Redwine Jackson, relies to impeach this statement contained in the certificates. Suffice it to say that such evidence has received careful consideration in consultation and we are clear to the conclusion that it is not sufficient to overcome the weight which must be accorded to an official certificate of this character under the rule of our cases.

We have likened a certificate of probate to a certificate of acknowledgment in the respect that the act of taking is the exercise of a judicial function. But we think they are different in their effect.

It has been held by this court in regard to acknowledgments that when the certifying officer acquires jurisdiction by having the grantor and the instrument to be acknowledged before him, and then exercises his jurisdiction thus acquired, the resulting certificate is conclusive of the truth of all those facts therein stated, which the officer is by law authorized to state, until successfully assailed for duress or fraud, participated in by the grantee or brought to his notice when parting with the consideration. Fies & Sons v. Lowery, supra, and cases cited.

Parol evidence is only admissible to show, first, the absence of jurisdiction to take the acknowledgment in question in the concrete case; and, second, that fraud or duress affected the process of giving and taking the acknowledgment. Butler v. Hill, 190 Ala. 576, 67 So. 260. A grantor who has gone before a notary and acknowledged his signature to a conveyance cannot show by parol evidence that in fact he did not execute the conveyance, there being no fraud or duress shown, for the certificate of acknowledgment is conclusive of the execution. Butler v. Hill, supra. A married woman who has executed a separate acknowledgment in proper form cannot show by parol evidence, in contradiction of the certificate of acknowledgment, that her husband was present at all times or that she was not asked whether she signed the mortgage of her own free will and accord. Moore v. Bragg, 212 Ala. 481, 103 So. 452.

We think the certificate of probate is also conclusive of the truth of all the facts therein stated, where the certifying officer had jurisdiction, and that such a certificate can be impeached *as to the truth of the facts therein stated* only for fraud and duress.

However, there is this distinction between a certificate of acknowledgment and a certificate of probate. In the case of a certificate of acknowledgment the grantor has appeared before the officer and

admitted the execution of the conveyance. But in a certificate of probate, such as is involved here, it is the alleged witness to the instrument who appears before the certifying officer and swears, in substance, that the grantor voluntarily acknowledges the conveyance in his presence, and in the presence of the other subscribing witness.

The alleged grantor is not thereby prevented from showing by parol evidence or otherwise that the alleged subscribing witness swore falsely before the certifying officer. Nor can those who claim under the purported grantor be prevented from showing that the alleged witness swore falsely in the certificate of probate. In other words, a certificate of probate is not conclusive of the fact that the grantor did execute the conveyance as alleged by the affiant in the certificate.

We come now to consider the evidence offered upon which appellee, Lenora Redwine Jackson, bases her contention that the alleged subscribing witnesses did swear falsely.

There is no direct evidence to support such contention. In other words, no witness testified that R. C. Redwine did not execute the conveyance as stated in the certificates of probate.

However, we are constrained to the conclusion that the decree of the trial court is correct and should be affirmed.

▮▮▮ The evidence shows that although the complainant claims that on July 5, 1939, he obtained, by virtue of the afore-mentioned conveyance, all the interest which his brother, R. C. Redwine, had in the estate of their deceased father, Mark Redwine, except oil and mineral rights, and that he had the deed in his possession and in his pocket at the time the partition proceedings were held in the Fall of 1939, wherein one-fourth of 640 acres was set aside to the widow of R. C. Redwine, he asserted no claim to the interest which the said R. C. Redwine had inherited. It is inconceivable to us that the complainant would have sat idly by and permitted such a large portion of his property to go to another if in fact he had a conveyance thereto. Complainant gives no satisfactory explanation

as to why he did not then assert his rights under the alleged deed.

Another significant fact is that the evidence shows that shortly after the partition proceedings were completed, the complainant went into bankruptcy and that he did not list among his assets the interest which he now claims to have acquired from his brother in the suit property by virtue of the aforementioned conveyance.

We have reviewed with great care the evidence which we are permitted to consider under the existing law affecting the review of cases of this kind, and are forced to the conclusion that the weight of the evidence shows that no such conveyance was executed by R. C. Redwine on July 5, 1939, as contended by complainant. We hold, therefore, that the trial court correctly decreed that the appellee, Lenor Redwine Jackson, is the owner of the one-fourth undivided interest in the suit property formerly owned by R. C. Redwine and that the purported conveyance from R. C. Redwine, under date of July 5, 1939, to W. K. Redwine be cancelled of record.

The decree is affirmed.

Affirmed.

FOSTER, LIVINGSTON, and STAKELY, JJ., concur.

BROWN and SIMPSON, JJ., dissent.

BROWN, Justice (dissenting).

What is frequently referred to as "the lazy lawyer's act" is now § 372(1), re-enacted by the legislature on June 8, 1943. Acts 1943, p. 105, Code 1940, Title 7, § 372(1). This act if a valid exercise of legislative power relieves the parties in equity cases from making any objection to any testimony *or evidence* and directs the court what it must do in considering such cases. The title of said act is, "To regulate the practice in equity cases the matter of objections to and consideration of testimony and evidence." Its prescriptions are:

"In the trial of equity cases in the circuit court, or other court of competent jurisdiction in this state it shall not be required or necessary that objection be

made to *any testimony or evidence* which may be offered by either party, and on the consideration of such cases the court shall consider only such *testimony and evidence* as is relevant, material, competent and legal and *shall not consider* any testimony or evidence which is irrelevant, immaterial, incompetent or illegal, whether objection shall have been made thereto or not, and whether such testimony be brought out on direct or cross or re-direct examination, or *is hearsay*. On appeal the supreme court shall consider only such testimony as is relevant, material, competent and legal and neither court shall be required to point out what testimony or evidence should be excluded or not considered. Either party, on submission, shall have the privilege of calling attenton to any testimony or evidence which is deemed objectionable. If specific objection be made to any evidence and a ruling made thereon by the trial court, this statute shall not apply to such evidence." [Italics supplied.]

The practice of the courts touching the question of objections to evidence was long ago settled. In Sanders v. Knox, 57 Ala. 80, 83, this court speaking through Brickell, C. J., observed:

"The objection to the introduction of the mortgage was general and undefined, 'because the same was illegal, irrelevant and incompetent.' On proper evidence of execution, the mortgage was certainly legal, relevant, and competent. It was the evidence of the title of the plaintiffs to the cotton, for the conversion of which a recovery was claimed. If the want of proper evidence of execution had been particularized as an objection the plaintiffs apprised of it, would have had the opportunity of removing the objection by supplying the evidence. A general objection of this character cannot be sustained, unless the evidence is manifestly illegal and irrelevant, and apparently incapable of being rendered admissible in connection with other evidence. Such objections may mislead the party against whom they are taken, and the court, and lead to the practice of making objections in this court, which if made in the primary court would have been obviated. We concur with what was said by Collier, C. J., in Wallis v. Rhea & Ross, 10 Ala. [451], 453: 'Undefined objections should never be made to the admission of evidence; and it may be laid down generally, that if the party making them will not particularize, the court is not bound to cast about for the grounds upon which in the mind of counsel they are rested, but may properly disregard them.' "

As a matter of consistent judicial policy this Court applied the same rule to equity cases. The holding was that in chancery objections to the admissibility of evidence ought to be reduced to writing and a reference to them should be incorporated in the note of submission or they should otherwise be called directly to the chancellor's attention, and if this is not done and the chancellor fails to notice them, the presumption is indulged that they are waived. Seals v. Robinson & Co., 75 Ala. 363.

This policy was reaffirmed in Rice & Wilson v. Tobias, 89 Ala. 214, 7 So. 765, wherein the Court held: "Objections to evidence in a chancery case, which were not raised in the court below, can not avail in this court, either for the purpose of putting the lower court in error in admitting the evidence, or having it excluded by this court in passing on the sufficiency of the evidence to sustain the decree." This judicial policy prevailed in Alabama until the enactment of the "lazy lawyer" statute, quoted at the head of this opinion.

The statute quoted was first enacted in 1923, Acts 1923, p. 631, § 1, and was embodied in the Code of 1923 as § 6565, but was omitted by the Code Commission from the Code of 1940, no doubt because on its face it is an unwarranted invasion of the powers of the judiciary in contravention of Sections 42 and 43 of the Constitution of 1901. The last mentioned section of the Constitution provides:

"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise

582

the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men." Skinner's Const., Art. III, § 43, page 242.

In Montgomery v. State, 231 Ala. 1, 163 So. 365, 367, 101 A.L.R. 1394, it was said: "From this provision of our organic law, it is clear and manifest that the powers of government are distributed to three departments, each of which is confined to a separate body of magistracy (the legislative, the executive, and the judicial), and that each of these departments is emphatically forbidden to exercise any of the powers belonging to either of the others, 'unless expressly directed or permitted by the constitution.'"

In Hackett v. Cash, 196 Ala. 403, 72 So. 52, 53, this court refused to follow the prescription of the Act of 1915, p. 824, purporting to regulate appeals from judgments of the circuit court without a jury, prescribing that this court on appeal must consider cases tried by a court without a jury without any presumption in favor of the trial court, and without excepting trials where testimony was given *ore tenus,* with the following observations:

"* * * The Legislature evidently intended, by this act of 1915, to provide for trials without a jury in all courts unless it was demanded, and to do away with the necessity of excepting to the finding or conclusion upon the facts in order to review the same in the appellate court, but did not mean to override a long line of decisions of this court as to what weight would or would not be accorded the conclusion of the trial court upon the facts. Moreover, if it was otherwise intended, it would be an invasion of the judiciary to require this court to disregard the finding of the trial court upon facts when said trial court had a better opportunity to pass upon and consider the evidence than the appellate court."

In Carleton & Slade v. Goodwin's Executor, 41 Ala. 153, this court repudiated and held the act of February 18, 1867, entitled "An Act to prevent undecided appeals to the supreme court from losing their force, by discontinuance or otherwise, unless the appellant move for a discontinuance after legal cause therefor has occurred," on the ground that said act was an invasion of the judiciary and violated the constitution of that date.

In Hodge v. Joy, 207 Ala. 198, 92 So. 171, this court followed Hackett v. Cash, supra, holding that the prescription of the statute did not apply to trials before a court without a jury in which the evidence was given *ore tenus.* The same application is made in Mitchell v. Walker, 235 Ala. 458, 179 So. 633, and in the following cases: Ruf v. Davis, 232 Ala. 477, 168 So. 674; Ezzell v. First Nat'l Bank of Russellville, 232 Ala. 161, 167 So. 546, and a long line of other cases.

. On the strength and under the provisions of said act, now § 372(1), Title 7, Code of 1940, my brother, Mr. Justice LAWSON, proposes to overrule the holding of the court in Warner v. Warner, 248 Ala. 566, 28 So.2d 701, insofar as it holds that said act does not apply to the competency of witnesses; and the decision in Crum v. Crum, Ala.Sup., 43 So. 392,[1] written by Mr. Justice Stakely following the Warner Case and the later case written by Mr. Justice Lawson, Adams v. Griffin, Ala.Sup., 45 So.2d 22.[2] The basis for this drastic step is that there is no distinction between "incompetent testimony or evidence" and "the competency or incompetency of a witness," and that the prescription of said act applies to both and, therefore, relieves the parties from making objection to the incompetency of witnesses under § 433, Title 7, Code of 1940. The effect of such holding is to broaden and extend the scope of said act beyond the terms expressed therein,—in legal effect amending it by judicial process, which itself offends the Constitution. State ex rel. Day v. Bowles, 217 Ala. 458, 116 So. 662. The expressed tendency of our decisions has been to re-

1. 253 Ala. 163.

2. 253 Ala. 371.

strict the application of said statute to its terms as was done in Warner v. Warner, supra, and the other cases following that decision.

Hill v. Hill, 216 Ala. 435, 113 So. 306, 307, involved a controversy between the personal representative of M. A. Hill, deceased, and the heirs at law of W. C. Hill, deceased (appellees.) The estate consisted in a large part of lands. The widow of M. A. Hill, deceased, joined his heirs at law in the conveyance of a parcel of land to one Jennings who executed his several promissory notes for deferred installments of the purchase money payable to M. A. Hill. To arrange this purchase money indebtedness, Jennings secured a loan from the Federal Land Bank and the money was placed with Cather, the agent of the bank, to be delivered to M. A. Hill when the notes should be delivered up and the mortgage deed of trust executed by Jennings to M. A. Hill to be satisfied. Mrs. Hill died after which, everything else being arranged, Cather was confronted by the adversary claims of appellant as administratrix on the one hand and appellees as heirs of W. C. Hill on the other. The court observed: "It is conceded on all hands that the heirs in conveying the land and permitting the notes to be made payable to M. A. Hill were making some sort of provision for their mother. The difference between the parties arises out of their different understanding of the provision for Mrs. Hill—whether the purchase-money notes were made payable to her as a gift, or whether the provision was intended as a trust for her support while she lived, with remainder of any unexpended balance to the donors. * * *

"Whether a gift or a trust was intended is a matter of pure intention, though, apart from the relation between the parties, the presumption in the first instance would be that a gift was intended but this is a mere presumption. The issue thus presented by the stated difference between the parties called for the admission of all parol evidence, otherwise competent, tending to throw light on the question. Montgomery v. McNutt, 214 Ala. 692, 108 So. 752. * * *"

After quoting the provisions of the "dead man's statute," which deals with the competency of witnesses under the common law, the opinion proceeds:

"The witnesses in question, parties to this suit and interested in its result, undertook to testify to a transaction in which it was agreed between them and their mother, whose interest and estate is represented by appellant, her administratrix, substantially as we have stated the facts, sufficient, if competently proved, to establish the trust for which appellees contend. However, Elizabeth Nichols, a granddaughter of appellant's intestate, testified to facts going to show that she was an heir of W. C. Hill (her mother, his daughter, having died before said Hill); that she signed the deed at Ft. Payne in DeKalb county; that she was not present when Jennings executed the mortgage deed of trust which secured to M. A. Hill the notes for unpaid purchase money and knew nothing of it; and that (here stating the relevant substance of her testimony) 'none of the other heirs ever talked to me about how the money was to be used, but it was generally understood among all the children that Mrs. Hill was to have the use of the money during her lifetime and then it was to come back to us.' Edith Webster, another heir, sister of Elizabeth Nichols, testified, in substance, to the same effect.

"This relevant substance of their testimony was elicited by appellant on cross-examination. It is stated in narrative form in the record and we have no alternative but to deal with it as having been drawn out by appellant by interrogatories to which the narrative aptly responds. We will not be understood as holding that appellant had not the right to cross-examine these witnesses as to any fact related by reasonable connection with the matter elicited on direct examination or that thereby she made these witnesses her own. The point is that the matter thus drawn out by appellant, notwithstanding it may have been in bad form, was relevant and material and due to be considered by the court. The only difficulty about it arises out of the rule found stated in section 6565 of the Code, which makes it the duty

of the court, in the consideration of equity causes, to 'consider only such testimony as is relevant, material and competent, and shall exclude and not consider any testimony which is irrelevant, immaterial or incompetent, whether objection shall have been made thereto or not,' and so likewise on appeal. The effect and operation of this section in an analogous case had consideration in Cotton v. Cotton, 213 Ala. 336, 104 So. 650, and in Woody v. Tucker, Willingham & Co., 215 Ala. 278, 110 So. 465.

"This section causes no particular trouble so far as concerns the relevancy and materiality of evidence, but as to the matter of competency we find it more difficult. 'By competent evidence is meant that which the very nature of the thing to be proved requires as the fit and appropriate proof in the particular case, such as the production of a writing where its contents are the subject of inquiry.'—1 Greenl.Ev. § 2; Jones on Ev. (2d Ed.), § 7. But in more than one conceivable circumstance secondary evidence is admissible, and, if the parties without objection try their issues on secondary evidence, no reason is perceived why the court should interpose by gratuitously assuming a fact which would deny the competency of the evidence adduced. To pursue the subject a little further, it is frequently a matter of difficulty to say whether the expression of a witness is the statement of a mere conclusion or whether it is to be admitted as the statement of a collective fact, and, if the parties elicit conclusions where only a statement of its constituent elements would be competent according to the strict rules of evidence, triers of fact generally understand such matters, and no harm to the cause of justice results if the parties are content to follow that method. So, in general agreement with the view thus outlined, we state our opinion that the testimony of these two witnesses as to the general understanding among the children of Mrs. Hill, who were the heirs of W. C. Hill, to the effect that Mrs. Hill was to have the use of the money during her lifetime and then it was to come back to them, should, in the absence of objection at least,

be accepted as evidence of their intention in executing the conveyance of their land." Hill v. Hill, 216 Ala. 434, 436–437, 113 So. 306.

This opinion was written by the same justice who wrote the opinion in Moore v. Moore, 212 Ala. 685, 103 So. 892, cited in the opinion of Mr. Justice LAWSON. This opinion is consistent in letter and spirit with the rule announced in Warner v. Warner, supra.

In Cotton v. Cotton, 213 Ala. 336, 104 So. 650 (referred to in the opinion just quoted), the question to be determined was whether appellee was the lawful widow of deceased, J. R. Cotton. This question was raised for the first time by exception to the register's report in setting aside the homestead of the widow. The opinion states:

"In 1914 appellee intermarried with one Taylor. Appellee testified in the trial court that Taylor, on his bill, had procured a decree of divorce from her prior to 1917, no objection to her testimony being interposed on any ground, and that afterwards she was allowed to marry again by a decree of the court dated from Enterprise. Now, renewing an objection made for the first time in the exceptions to the register's report, appellant, referring to the act of September 28, 1923 (Acts, p. 631), now section 6565 of the Code, raises objection to this testimony as to the divorce on the ground that there was better evidence in the records of the court rendering the decree which should have been produced, and in the absence of which appellee's testimony should not have been considered. The statute referred to does provide that in the trial of any case in equity 'it shall not be required or necessary that objection be made to any testimony which may be offered by either party,' and that, on consideration of any cause in the trial court or in this court on appeal, 'the court shall consider only such testimony as is relevant, material and competent, and shall exclude and not consider any testimony which is irrelevant, immaterial or incompetent, whether objection shall have been made thereto or not, * * * and it shall not be required or necessary for

either the trial court or the Supreme Court to point out or indicate what testimony, if any, should be excluded or not considered,' thus imposing on the courts the burden of casting about for questions of admissibility which parties may not have suspected or have been willing to waive. *But the court, while observing the statute, is under no duty to spread the trap for unwary litigants beyond the language employed in its enactment.* The testimony here in question was neither irrelevant nor immaterial. It was incompetent sub modo.— [Italics supplied.]

"The 'best evidence' rule affects the competency of evidence; but competency within the meaning of that rule, like the competency of witnesses, often depends on proof of facts not apparent on its face, and the burden of showing incompetency in such cases rests upon the party objecting to the admission of the evidence. In the case presented by the record, it will be conceded of course that presumptively there was a record of the divorce proceeding and that prima facie the evidence offered by appellee was incompetent; but appellee produced a certificate purporting to emanate from the branch of the circuit court at Enterprise under the sign manual of a deputy register at that point—a de facto deputy at least—and, if a genuine document, authenticating a decree of the circuit court of Coffee of date August 5, 1918, by the terms of which appellee was allowed to contract marriage again. If this certificate was a genuine document, then the decree of which it purports to evidence a modification was rendered in the court at Enterprise, because that was the only place at which to apply for a modification of a previous decree rendered in that branch of the court. And, further, the deputy register testified that the certified copy of the decree permitting appellee to marry again was a correct copy of the original in the court at Enterprise, that 'no decree was ever granted of this nature in that court without a petition and a certified copy of the divorce decree attached thereto,' and that since that time all the chancery files and records at Enterprise had been destroyed by fire. It is to be presumed that the court would not have entered a decree of modification without a competent knowledge of the decree so modified.

"Thus it appears that the whole case turns ultimately upon the question of the honesty of the certificate put in evidence by appellee; that certificate, if genuine, being the best available evidence of the decree on which appellee relied to sustain her contention that she was the lawful widow of J. R. Cotton, deceased, her formal marriage with him not being the subject of reasonable doubt. * * *."

The opinion in the Cotton Case was concurred in by Anderson, Chief Justice, Gardner and Miller, JJ., and the important utterance which I desire to stress is *"But the court, while observing the statute, is under no duty to spread the trap for unwary litigants beyond the language employed in its enactment."*

If the rule contended for in the opinion of Mr. Justice LAWSON is established, no skilled lawyer or solicitor in the trial of equity cases would ever interpose objections to testimony of any kind or to the competency of witnesses but would let his adversary if not so learned fall into the trap and after he gets to the court or a judge who is to hear and determine the case, he would proceed to shoot his adversary's evidence full of holes by objection that the other party had never thought of. This is the trap envisioned by Mr. Justice Sayre in his opinion in the Cotton Case, supra. Moreover, if the trial court and appellate court followed the prescription of the statute, the unwary litigant would lose his case and would never know on what ground it had been decided. This is not consistent with the practice and procedure of trial courts nor appellant courts as established by our decisions in this state. In Amberson v. Patterson, 227 Ala. 397, 398, 150 So. 353, 354, the court in applying the statute speaking by Mr. Justice Thomas observed:

" * * * If a party to the suit brings out on cross-examination incompetent evidence, which is relevant and material, and not objected to, the court will accept and

consider that evidence. Hill v. Hill, 216 Ala. 435, 113 So. 306; Louisiana State Life Ins. Co. v. Phillips, 223 Ala. 5, 135 So. 841; Cotton v. Cotton, 213 Ala. 336, 104 So. 650. Recent applications and observations of this statute are contained in Burkett v. Newell, 212 Ala. 183, 101 So. 836; Alabama Bank & Trust Company v. Jones, 213 Ala. 398, 104 So. 785; Moore v. Moore, 212 Ala. 685, 103 So. 892; Mink v. Whitfield, 218 Ala. 334, 118 So. 559; White v. White, 225 Ala. 155, 142 So. 524; Wilder v. Reed, 216 Ala. 29, 112 So. 312."

In the case last above cited Wilder v. Reed, 216 Ala. 29, 112 So. 312, 313, written by Mr. Justice Gardner and concurred in by Chief Justice Anderson, Sayre and Bouldin, JJ., it was observed:

"The larger portion of the evidence for complainant consists of statements to others made by the defendant members of this firm, but these statements are inadmissible as against defendant Reed, who was not present at the time. By virtue of the provisions of section 6565, Code of 1923, *in equity cases it is unnecessary that incompetent testimony be objected to, as the court, on appeal, is to consider only competent, relevant, and material testimony.* Burkett v. Newell, 212 Ala. 183, 101 So. 836; Alabama Bank & Trust Co. v. Jones, 213 Ala. 398, 104 So. 785. * * *" [Italics supplied.]

It will be noted and emphasized that the utterance in that case is, "In equity cases it is unnecessary that incompetent testimony be objected to, as the court, on appeal, is to consider only competent, relevant, and material testimony." There is not a word in the statute or in these decisions that deals with the competency of witnesses; that is left to the "dead man's statute." The utterance in Mink v. Whitfield, 218 Ala. 334, 118 So. 559, 560, is as follows:

"In equity cases, the court will only consider legal evidence, regardless of whether objections were interposed, and need not discuss and recite evidence which the court holds sufficient or insufficient to support a

decree from which an appeal is pending. * * *"

Stated in different language, the court under said statute may dispose of the case without ever giving the least suggestion as to the weakness of the loser's case and leave him in ignorance of why it was so decided. That may be due judicial administration of justice but to this course of procedure I respectfully decline to agree.

Let it be noted that the courts generally ignore that prescription of the act and usually give full expression to their conclusions of law and fact. Most of the utterances in respect to the act clearly limit its operation *to testimony* offered. I quote from White v. White, 225 Ala. 155, 158, 142 So. 524, 526, as follows:

"Many assignments of error relate to the introduction of evidence and motion to exclude same. Under section 6565 of the Code, in equity cases, it is not required or necessary that objection be made to any testimony, which may be offered by either party, and on appeal this court shall only consider the testimony which is relevant, material and competent, and this court is not required to point out or indicate what testimony, if any, should be excluded or not considered. * * *." This utterance restricts the application of the statute to *"testimony and evidence"* according to its language. The same restriction in the application of the act was observed in Wilder v. Reed, 216 Ala. 29, 30, 112 So. 312: "* * * By virtue of the provisions of section 6565, Code of 1923, in equity cases it is unnecessary that *incompetent* testimony be objected to, as the court, on appeal, is to consider only competent, relevant, and material testimony * * *."

In the light of the statement in the opinion of Mr. Justice LAWSON, 49 So.2d 121,[3] "In the instant case, counsel for Lenora Redwine Jackson objected to this line of testimony by the complainant at the time the evidence was elicited on the ground that he was an incompetent witness in that respect. Written objections were filed, which were included in the note of testimony or note of submission. However, the

3. Ante, p. 570.

trial court did not specifically rule on those objections, but the decree of the trial court contains language indicating that it considered only legal evidence."

These objections made according to the established rule of practice prior to the adoption of the act under consideration fully meet the holding in the Warner Case, supra, and the cases subsequently decided following the Warner Case and I can perceive no sound reason for nor can I see the wisdom in overruling these well considered cases. The testimony given by Mrs. Warner, the defendant, in identifying her diary, written when no one was present except the diary and God, stated facts in respect to the dealings between her and her son material and relevant to support the complainant's case. After identifying the diary she offered it in evidence as an exhibit to her testimony without objection. Making the diary was not a transaction or conversation with the deceased person, but was purely the act of the defendant, and was admissible against her as an admission against interest. It was so held in the Warner Case and not affected by the rule of the "dead man's statute." The statements in the answer of the defendant in Rogers v. Austill, 213 Ala. 163, 104 So. 321, were nothing more or less than an admission against interest and that case clearly supports the admission of the evidence in the Warner Case. See also, Amberson v. Patterson, 227 Ala. 397, 398, 150 So. 353.

As pointed out above, this Court in applying that statute has restricted it to evidence and testimony offered by the parties, and the effect of the opinion of Mr. Justice LAWSON is to extend the statute not only to testimony and evidence offered, but also to the competency of witnesses although no objection was made thereto. To this I cannot agree.

The vice of the act is that by such insiduous encroachment by legislative fiat the integrity and freedom of the courts to administer justice according to their own course of procedure, is impaired, and unless resisted, judgments of courts of justice will inevitably become a matter of legislative fiat and due process of law will lose its substance and become a mere shadow.

I repeat, if the opinion of my brother, Mr. Justice LAWSON becomes the law, no skilled trial solicitor in chancery will ever make objection to any evidence lest he enlighten his adversary, who for lack of skill may step into a trap. The skilled trial solicitor will wait until the case is submitted to the court and may then blast his adversary's case by a barage of objection not perceived or thought of by either of the parties. Such practice is inconsistent with sound judicial administration and due process of law.

Since *stare decisis* is a doctrine of judicial policy designed to preserve a just balance of correctness of decision and stability of law, the fact that a doctrine deemed erroneous is supported by a single decision may be a cogent but not a conclusive reason for reexamination of the question. A single decision may become a rule of property in the jurisdiction and in such cases it is undoubted that the doctrine of *stare decisis* forbids a departure therefrom; and closely related to this doctrine is the holding of a number of courts that where a particular transaction has been judicially passed on in proceedings between other parties, the doctrine of *stare decisis* requires adherence to the decisions so made. 7 R.C.L. page 1007, § 34. See also 7 R.C.L. page 1003, § 30; 14 Am.Jur. p. 287, § 66; 14 Am.Jur. p. 288, § 68; Kingsburry v. Buckner, 134 U.S. 650, 10 S.Ct. 638, 33 L.Ed. 1047; Cottrell v. Amerkan, Fla., 35 So.2d 383, 385.

Warner v. Warner, 248 Ala. 556, 28 So. 2d 701, was decided April 11, 1946, and it appears on the face of the opinion that it was a well-considered case. This decision was followed in Crum v. Crum, Ala.Sup., 43 So.2d 392,[4] in an opinion written by Mr. Justice Stakely and concurred in by Brown, Foster, and Lawson, JJ.; and again in the case of Adams v. Griffin, Ala.Sup., 45 So.2d 22,[5] in an opinion written by Mr. Justice Lawson concurred in by Foster, Livington, Simpson and Stakely, JJ., the two

4. 253 Ala. 163.

5. 253 Ala. 371.

concurrences embracing all the active Justices now on the Court.

In the light of these rulings and the unsettled construction of said act prior to the Warner Case, I am of the opinion that these subsequent decisions and the Warner Case should not be overruled.

SIMPSON, J., concurs in the foregoing opinion.